William F. SCHIERHOLZ and Joan F. Schierholz, Plaintiffs,

v.

The GOLDMAN FINANCIAL GROUP, IN-CORPORATED, RETIREMENT PLAN, and Goldman Financial Group, Incorporated as Plan Administrator for Goldman Financial Group, Incorporated, Retirement Plan, Defendants.

No. 4:94CV00319 GFG.

United States District Court,
E.D. Missouri,
Eastern Division.

Feb. 14, 1995.

Fred A. Ricks, Jr., Stanley G. Schroeder, Sr., McMahon and Berger; and Richard S. Bender, Rosenblum and Goldenhersh, St. Louis, MO, for plaintiffs.

Edward A. Scallet, Leboeuf and Lamb, Washington, DC, and William Sauerwein, St. Louis, MO, for defendants.

## MEMORANDUM AND ORDER

GUNN, District Judge.

This matter is before the Court on plaintiffs' motion for summary judgment. William F. Schierholz and his wife filed this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), challenging the decision of a pension plan administrator to deny him certain retirement benefits.

The record establishes the following. Schierholz was employed by Chemtech Industries, Inc. (Chemtech) as President and CEO since 1956. On October 14, 1986, he turned 65. His "Normal Retirement Date" under the Chemtech Retirement Income Plan (Chemtech Plan) in which he was a participant was November 1, 1987. Schierholz retired on June 30, 1987, and began receiving a monthly pension benefit of $7,263.60 to be paid monthly to Schierholz for his life, and then to his spouse, should she survive him, for her life, pursuant to Section 4.2 of the Chemtech Plan which provided:

> Each participant who retires from the employ of the Employer on his Normal Retirement Date will receive a normal retirement income commencing on such date. Each Participant who is in the employ of the employer on his Normal Retirement Date who is eligible to receive a normal retirement income may elect to receive a normal retirement income commencing on or after such date in accordance with rules prescribed by the Plan Administration.

On March 17, 1989, Goldman Financial Corporation, Inc. acquired ownership of Chemtech and on December 31, 1990, the Chemtech Plan merged into the Goldman Retirement Plan which continued to pay Schierholz his monthly benefit.

On April 15, 1991, Schierholz was rehired by Chemtech as its CEO. On January 22, 1992, the Goldman Plan Administrator advised Schierholz that his pension benefits would be suspended effective February 1, 1992, in light of his re-employment. Under Article 6.1(b) & (c) of the Goldman Plan, a Participant would not receive retirement benefits until he separated from service or attained age 70½. Article 6.4 of the Goldman Plan provides that if a participant is reemployed after his benefit commencement date and before attaining age 70½, monthly pension benefits would be permanently withheld during such employment.[1]

Appendix A to the Goldman Plan provides that "the Accrued Benefit of each Chemtech Participant shall not be less than the benefits, if any, accrued by the Chemtech Participant under the terms of the Chemtech Plan as of the Merger Date." The Chemtech Plan had no provision dealing with the pension rights of a rehired employee who was receiving pension benefits. Section 5.3 provided that a "Participant whose employment with the Employer continues after his Normal Retirement Date, and who has not elected to receive a normal retirement income commencing on or after his Normal Retirement Date, will receive a late retirement income [upon retirement]."

Upon Schierholz's administrative appeal, the Goldman Plan Administrator issued a final determination that Schierholz was not entitled to pension benefits while re-employed, until April 1, 1993 (the April of the year after he turned 70½). The Administrator first concluded that such benefits were not available under the Chemtech Plan because there was no indication of rules prescribed by the Chemtech Plan Administration for such benefits as required by Section 4.2 of the Chemtech Plan. Thus Appendix A

---

**1.** The provision that a participant may receive both pension benefits and a salary after age 70½ is required for a plan to qualify under the Internal Revenue Code, 26 U.S.C. § 401(a), for preferential tax treatment.

of the Goldman Plan did not apply, and under Article 6.4 of the Goldman Plan the benefits were not available.

The Plan Administrator's second rationale for denying the claim was that, even assuming the benefits in question were protected under Appendix A, granting Schierholz's claim would violate the nondiscrimination requirement of the Internal Revenue Code, 26 U.S.C. § 401(a)(4), for plan qualification,[2] and could thus result in disqualification of the Goldman Plan.

Upon recommencement of Schierholz's pension benefit on April 1, 1993, the Goldman Plan Administrator determined that the correct amount of the monthly benefit to which Schierholz was entitled was $5,754.68 and not $7,263.60. This amount was further reduced to collect the amounts the Administrator claimed were owed to the Plan as a result of (1) payment of benefits from May 1991 through January 1992 while Schierholz was re-employed, and (2) the payment of benefits from July 1987 through January 1992 in the wrong amount ($7,263.60 rather than $5,754.68 per month).

The Schierholzes filed this action challenging both the decision to suspend his benefits (Counts I and II) and the decision to reduce them (Count III).[3]

**2.** This section provides that benefits may not discriminate in favor of highly compensated employees. (There is no dispute that Schierholz is a highly compensated employee.)

**3.** Count IV of the complaint alleging violation of § 510 of ERISA, 29 U.S.C. § 1140 (retaliation for exercising ERISA rights), was dismissed by this Court for failure to state a claim.

**4.** Article 7.3 of the Goldman Plan lists the powers of the Plan Administrator, which include the powers
  (a) To interpret the Plan, its interpretation thereof to be final and conclusive with respect to any Employee, former Employee, Participant, former Participant, or Beneficiary.
  (b) To decide all questions concerning the terms and provisions of the Plan and the eligibility of any person to participate in the Plan.
  (c) To determine the amounts to be distributed to any Participant or Beneficiary in accordance with the provisions of the Plan.
  At the end of the list of powers, the following sentence appears: "All actions taken under the Plan by [the administrator] shall involve a mini-

## I. Suspension of Benefits

Schierholz first argues that the Plan Administrator's decision to suspend his pension benefits should be reviewed *de novo;* the Administrator argues that the decision must be affirmed unless it is arbitrary and capricious. In *Firestone Tire & Rubber Company v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that in an ERISA action under 29 U.S.C. § 1132(a), challenging the denial of benefits based on plan interpretation, the plan administrator's decision "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57.

The Court need not resolve this matter because the Court believes that even under the arbitrary and capricious standard of review, the Schierholzes are entitled to summary judgment on this issue.[4] This standard is analogous to the abuse of discretion standard: a decision by a plan administrator to deny benefits is an abuse of discretion if it is "extremely unreasonable." *Lutheran Med. Center v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan,* 25 F.3d 616 (8th Cir.1994); *See also Finley v. Special Agents Mutual Benefits Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir.1992)

mum amount of discretion and shall be applied in a uniform and non-discriminatory manner using written objective criteria, treating all individuals in similar circumstances alike."

This language might be sufficient to invoke the arbitrary and capricious standard, despite the last sentence quoted, in a case turning on the interpretation of the terms of the Goldman Plan. The resolution of Schierholz's claim, however, turns on the interpretation of the terms and provisions of the Chemtech Plan. Accordingly, the Court believes that *de novo* review is appropriate. *Cf. Baxter v. Lynn,* 886 F.2d 182, 188 (8th Cir.1989) (trustees' decision that subrogation clause in ERISA plan created subrogation lien for amount of medical benefits it paid on behalf of participant's son was subject to *de novo* review, even though plan gave trustees final authority to determine all matters of eligibility for payment of claims; plan did not grant trustees authority to construe ambiguous terms or to interpret meaning of subrogation clause).

(setting forth factors to consider in determining reasonableness of plan administrator's interpretation).

■ The Court concludes that in the present case the Plan Administrator's interpretation of the Chemtech Plan renders §§ 4.2 and 5.3 of the Plan meaningless and is contrary to the clear language of the Plan, two key *Finley* factors. The Plan Administrator's reasoning that the benefits Schierholz seeks were not available under the Chemtech Plan because rules may not have been prescribed is not reasonable; the absence of procedural rules cannot deprive participants of substantive benefits granted by the terms of the Plan.

■ Furthermore, the second rationale of the Plan Administrator's final determination is also unreasonable. A plan administrator cannot rewrite the terms of the plan so as to take away an accrued benefit in order to protect the qualified status of the plan. Thus, even if paying Schierholz the benefits he seeks would violate the nondiscrimination requirement for qualification of the Plan,[5] this would not be a ground to deny his claim.

Finally, the Court notes an inherent inconsistency in the Plan Administrator's determination. In explaining the second rationale for the decision (violation of the nondiscrimination requirement), the Administrator assumes that the benefit involved was available under the Chemtech Plan; however, the reason given for the benefit's failure to satisfy an exception to the nondiscrimination provision is that the benefit was not available under the Chemtech Plan.

In sum, the Court concludes that under the terms and provisions of the Chemtech Plan, Schierholz had a right to continue receiving his "normal retirement income" even after he resumed working for Chemtech. Although this may not be a common feature of employee retirement plans, there is nothing to prevent a plan from providing such a benefit at age 65, rather than at age 70½ as the Gold-

man Plan does. Thus Appendix A of the Goldman Plan, as well as ERISA, 29 U.S.C. § 1058,[6] mandates the grant of Schierholz's claim for the suspended benefits. The Schierholzes have established that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law, *see* Fed.R.Civ.P. 56(c), with respect to the suspension of benefits.

## II. *Reduction in Benefits*

■ The $7,263.60 monthly benefit originally paid Schierholz was calculated as follows: When Schierholz retired, he had accrued a monthly benefit of $10,140.60, assuming it would be paid as a straight life annuity. Under the terms of the plan, however, the maximum monthly benefit he could have received was $8,033.90. This maximum was based on the Internal Revenue Code's maximum allowable for qualified plans. In order to determine the monthly amount of a joint and survivor annuity, the pension option Schierholz selected, an actuarial factor had to be applied to the benefit he would have received had he selected the straight life annuity. This factor was applied to the $10,140.60, rather than to the $8,033.90. The resulting amount was $7,263.60.

When Schierholz's pension benefits were to recommence on April 1, 1993, the Goldman Plan Administrator determined that the actuarial factor should have been applied to the $8,033.90, resulting in a reduced monthly payment of $5,754.68. The Schierholzes challenge this decision and the further reduction in the monthly benefit to recoup the alleged overpayment from the date of his initial retirement.

Even under *de novo* review, the Court concludes that the method used by the Goldman Plan Administrator to calculate Schierholz's monthly benefit was correct. *See* 26 U.S.C. § 415(b)(2)(B) & Treas.Reg. § 1.415–3(c)(1) (actuarial conversion from straight life annuity to joint and survivor annuity is done

---

5. The Court expresses doubt that such a violation exists. The distinctions the Plan Administrator draws between Schierholz's situation and that of other Chemtech employees who received pension benefits and a salary are not persuasive.

6. This section provides that a plan may not merge with another plan unless each participant would receive a benefit after the merger equal to (or greater than) the benefit he would have received before the merger.

*after* accrued benefit is reduced to meet plan limitation). There is nothing to prevent the Plan Administrator from recouping the overpayment upon realizing the error. Thus, the Schierholzes' motion for summary judgment on Count III must be denied. Because defendants have not filed a cross-motion for summary judgment, however, the Court cannot rule in their favor on this count at this point.

Accordingly, **IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment is granted as to Counts I and II, and denied as to Count III. The actual amount of the judgment in plaintiffs' favor will be determined when the entire case is resolved.

## EXHIBIT

GOLDMAN FINANCIAL GROUP

INCORPORATED

ONE POST OFFICE SQUARE

SUITE 4100

BOSTON, MASSACHUSETTS 02109

October 8, 1992

*FEDERAL EXPRESS*

Mr. William F. Schierholz

600 Aspen Ridge Court

Chesterfield, Missouri 63017

Re: *Final Determination re: Schierholz Benefit*

Dear Mr. Schierholz:

As Plan Administrator of the Goldman Financial Group, Incorporated Retirement Plan (formerly, The Goldman Group Retirement Plan for Chemicals) (the "Goldman Plan"), we have completed our review of our earlier decision regarding your claim for benefits. Pursuant to Section 7.5 of the Goldman Plan, this letter should be construed as the final determination of the Plan Administrator denying your claim for benefits.

We have conducted our review based on all information available to us, including information provided by you and Chemtech Industries, Inc. ("Chemtech"). We hereby explicitly note that, despite our numerous requests over the past year to Chemtech for documentation and specific information relating to this matter, we have received relatively little information and some of the information we have received is incomplete or irrelevant to our review. At the late date of Tuesday, October 6, we received additional information which added very little to our substantive review and determination regarding the denial of your benefit.

This letter contains citations to relevant plan documents and to applicable law.

### FACTS

Chemtech maintained the Chemtech Industries, Inc. Retirement Income Plan (the "Chemtech Plan"). On March 17, 1989, Goldman Financial Group, Incorporated ("GFGI") acquired Chemtech. On or about December 31, 1990, the Chemtech Plan merged into the Goldman Plan.

You are a "highly compensated employee" within the meaning of Section 414(q) of the Internal Revenue Code of 1986, as amended (the "Code").

After attaining your Normal Retirement Date (age 65) in 1986, you remained in the employ of Chemtech. From November 1, 1986 to July 1, 1987, it appears that you concurrently received retirement benefits under the Chemtech Plan and salary compensation from Chemtech.[1] On or about July 1,

---

1. We have received contradictory information concerning retirement benefits paid to you between November 1, 1986 and July 1, 1987. By letter dated November 22, 1991, Yvonne J. Stewart, Human Resources Manager of Chemtech, informed us that you received retirement benefits during this period. On other occasions, Ms. Stewart has stated variously that (i) you did not receive any retirement benefits during this period, and (ii) she could not comment on whether you had received a lump sum payment equal to the retirement benefits you would have received for this period. Despite our requests to Chemtech over the past year for further information about payments to you during this period, we have not received any information which would clarify this matter. Please note that neither the analysis contained in this letter nor our final determination concerning the Schierholz Benefit would be affected if you did not, in fact, receive retirement benefits between November 1, 1986 and July 1, 1987.

1987, you retired and received retirement benefits, first under the Chemtech Plan and later under the Goldman Plan. You recommenced employment with Chemtech on or about April 15, 1991, recommenced receiving salary compensation and continued to receive pension payments under the Goldman Plan (this concurrent receipt of pension payments and salary compensation is hereinafter referred to as the "Schierholz Benefit"). On January 22, 1992, after the Plan Administrator discovered that you were continuing to receive pension payments despite your reemployment, your pension payments were suspended.

You made a claim for the Schierholz Benefit by letter to the Plan Administrator dated February 11, 1992 (*see Exhibit 1*). Your claim was denied by letter dated May 5, 1992 (*see Exhibit 2*). By letter dated June 12, 1992 you appealed the denial of your claim (*see Exhibit 3*). By letter dated August 6, 1992 (*see Exhibit 4*), we informed you that we were conducting a review of our earlier decision denying your claim and that, due to the complexity of the issues under review and the insufficiency of the records in our possession, the review period would be extended to 120 days from the date of your appeal, as provided in Goldman Plan Section 7.5(b). This letter constitutes the final determination of the Plan Administrator.

## *DETERMINATION*

The Plan Administrator has a legal responsibility to administer the Goldman Plan in accordance with the terms of the plan, as evidenced by plan documents. The Plan Administrator also has a fiduciary responsibility to protect the Goldman Plan's qualified status for the benefit of all plan participants.

To the best of our knowledge, there is no plan documentation which requires the provision to you of the Schierholz Benefit. Further, the Goldman Plan would risk disqualification if the Schierholz Benefit were provided to you. Therefore, we must deny your claim for the Schierholz Benefit.

## *RATIONALE*

1. *Plan Documentation Does Not Require Provision of the Schierholz Benefit.*

(a) *Terms of Chemtech Plan.* Chemtech Plan Section 4.2 provided that:

"Each Participant who retires from the employ of the Employer on his Normal Retirement Date will receive a normal retirement income commencing on such date. Each Participant who is in the employ of the Employer on his Normal Retirement Date who is eligible to receive a normal retirement income may elect to receive a normal retirement income commencing on or after such date *in accordance with rules prescribed by the Plan Administration*" (emphasis supplied).

To the best of our knowledge, the Plan Administration of the Chemtech Plan did not promulgate any rules permitting employees who work beyond their Normal Retirement Date to elect to receive pension payments while still employed. We are not aware of any written materials by which the Plan Administration might have made employees aware of the availability of the Schierholz Benefit, nor have we seen any election form which employees might have used to elect to receive the Schierholz Benefit when they reached their Normal Retirement Date. Moreover, the fact that other employees who remained employed beyond their Normal Retirement Date did not opt to receive the Schierholz Benefit argues the lack of any such rules or documentation, since such employees would have no reason not to choose to receive the Schierholz Benefit if they knew it was available to them.

Section 404(a)(1)(D) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provides that a plan fiduciary (such as the Plan Administrator) shall discharge his duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title." Since, to the best of our knowledge, there are no documents prescribing rules relating to the Schierholz Benefit, then, under the terms of Chemtech Plan Section 4.2, the Schierholz Benefit is impermissible.

(b) *Terms of the Goldman Plan.* The terms of the Goldman Plan explicitly prohibit the Schierholz Benefit. Goldman Plan Section 6.4 requires the suspension of pension payments to any retiree who returns to active employment, as follows:

> "If any Participant is reemployed by an Employer or Affiliated Employer on or after his Benefit Commencement Date and before attainment of age 70-½, or if any Participant continues in employment with an Employer or Affiliated Employer after his Normal Retirement Date, the benefit payable for a calendar month will be permanently withheld . . ."

The Plan Administrator is aware that Appendix A to the Goldman Plan provides that, upon the merger of the Chemtech Plan into the Goldman Plan, all accrued benefits and optional forms of benefit under the Chemtech Plan shall be preserved under the Goldman Plan. As discussed in (a) above, the Plan Administrator has determined that the Schierholz Benefit is not a benefit provided by the terms of the Chemtech Plan; thus, it is not protected by Appendix A to the Goldman Plan.

Nonetheless, in order to be most fair to you, the claimant, the following discussion is based on the premise (which the Plan Administrator disputes) that the Schierholz Benefit is an "optional form of benefit" and, as such, is protected under Appendix A to the Goldman Plan.

2. *Provision of Schierholz Benefit Could Result in Disqualification of the Goldman Plan.*

Even if it could be argued that the Schierholz Benefit was provided under the Chemtech Plan, the provisions of such a benefit would violate the nondiscrimination provisions of the Code, thus risking plan disqualification.

The final regulations promulgated under Code Section 401(a)(4) state that a "benefit, right or feature," such as the Schierholz Benefit, may not be provided in a manner that impermissibly discriminates in favor of high-ly compensated employees (Reg. Section 1.401(a)(4)–4(a)(1)).

(a) *Special Rule.* Under the Special Rule applicable to mergers and acquisitions, each benefit, right or feature (hereinafter referred to as a "benefit") of a plan of an acquired corporation (such as Chemtech) is treated as satisfying the nondiscrimination requirements if the following three-prong test is satisfied (Reg. Section 1.401(a)(4)–4(d)):

(i) a benefit must be "currently" and "effectively" available immediately before the merger or acquisition (this determination is made taking into account all nonexcludable employees in the Chemtech controlled group);

(ii) a benefit must be "currently" and "effectively" available immediately after the merger or acquisition (this determination is made taking into account all nonexcludable employees in the Goldman controlled group); and

(iii) the benefit must be available after the merger or acquisition on the same terms as it was available before the transaction (*i.e.,* the benefit must continue to be available to employees to whom the benefit was available before the merger or acquisition and may not be extended to additional employees to whom the benefit was not available before the merger or acquisition; except that, in certain cases, the benefit may be extended to new employees who are hired during a "transition period" after the acquisition and before the end of the plan year following the plan year in which the merger or acquisition occurred).

With respect to prongs (i) and (ii) of the Special Rule, as discussed below, facts and circumstances make it highly unlikely that the Internal Revenue Service (the "IRS") would view the Schierholz Benefit as being "effectively" and "currently" available to employees on a nondiscriminatory basis. Moreover, as discussed above, the Plan Administrator has determined that the Schierholz Benefit was not provided for under the Chemtech Plan and, therefore, the Schierholz Benefit clearly could not pass prong (iii) of the Special Rule, since the Schierholz Benefit was not available on a grandfathered basis to Chemtech employees whose employment

changed as a result of the acquisition (*see* Goldman Plan Section 6.4, which provides for the suspension of pension payments to any retiree who returns to active, full-time employment).

(b) *General Rule.* If all prongs of the Special Rule are not passed, the benefit in question must satisfy the General Rule, which states that a benefit must be "effectively" and "currently" available to employees on a nondiscriminatory basis for all plan years (not only immediately before and immediately after the acquisition).

(i) *Effective Availability.* Reg. Section 1.401(a)(4)–4(c)(2) (Example 2) provides that if the Plan Administration of the Chemtech Plan did not adequately inform eligible employees of the Schierholz Benefit, then the Schierholz Benefit would not satisfy the effective availability requirements. In all of the plan documentation reviewed in connection with this matter, we have found only one brief and convoluted sentence which might be interpreted as referring to the Schierholz Benefit (and that is buried in a page-long paragraph in the 1984 Summary Plan Description). Such a reference does not rise to the level of disclosure required by the regulations.

As discussed above, the fact that numerous employees who remained employed beyond their Normal Retirement Date have not elected to receive the Schierholz Benefit, when there would be no disadvantage to such an election, argues that the Schierholz Benefit was not effectively available to them. We are aware of at least one highly compensated employee (J.D. Ellington) and several nonhighly compensated Chemtech employees (F.X. Maxwell, M.E. Phelan, E.D. Pitts, A. Mock, Jack Jacobi, Norman Kuperschmid and Ruth Hoelter) who have passed their Normal Retirement Date and yet are not receiving the Schierholz Benefit. In addition, we have spoken with William Ries, age 67, a current Chemtech employee, who has no knowledge of any provision in the Plan which permits the Schierholz Benefit. If Mr. Ries' experience is representative (and we have no reason to believe that it is not), the Schierholz Benefit does not satisfy the effective availability requirements of the Regulations.

You have informed us of certain Chemtech employees other than yourself who have concurrently received salary and pension payments. However, each of these cases is clearly distinguishable from yours and does not, in fact, demonstrate that the Schierholz Benefit is effectively available to nonhighly compensated Chemtech employees:

John Allen retired in 1973 at age 67. His benefit under the Chemtech Plan was annuitized and, when he was reemployed on September 1, 1982, he received salary compensation and continued to receive annuity payments. We point out that Mr. Allen's annuity was paid, not by the Chemtech Plan, but by the insurance company from which his annuity had been purchased.

Ann Terry retired at age 69 in 1985. Ms. Terry apparently was then reemployed for a time as a consultant and later as a part-time employee and, from May 1, 1985 to November 20, 1987, she received both compensation and pension payments. We note that Ms. Terry did not begin receiving pension benefits until mid–1985. This sequence of events argues that the Schierholz Benefit was not available to Ms. Terry in the same manner that it was available to you (*i.e.,* from the earliest possible date of age 65 and during periods of full employment).

A. Linda Ray retired in 1988 at age 66 and received both pension payments and compensation for a three-month period in 1988 during which she was a part-time employee. This brief overlap is not comparable to the on-going nature of the Schierholz Benefit.

We have also been informed that Chemtech employees Jeanine Hoffman, Wanda Howard and Delton Groothuis terminated their employment, returned to work on a part-time basis, and continue to receive both pension payments and compensation. The situation of these employees is clearly distinguishable from yours because of the part-time, supplemental nature of their

employment (W–2 Forms for 1991 show that their salaries ranged only from $4,475 to $8,752), whereas the Schierholz Benefit constitutes the receipt of both full salary and full pension benefits. We further point out that all of these employees are under age 65 and that Reg. Section 1.401(a)–1(b)(1) prohibits a pension plan from making in-service distributions to employees who have not reached their Normal Retirement Date; thus, it could be argued that such distributions may result in the loss of the Plan's tax-qualified status. Chemtech has refused to provide us with any information regarding the current status and employment of these individuals.

We also direct your attention to Reg. Section 401(a)(4)–4(c)(2) (Example 3), which provides that a benefit which is theoretically available to all plan participants, but which is, in fact, only provided to one highly compensated employee, is impermissibly discriminatory. Even if it could be demonstrated that the availability of the Schierholz Benefit had been widely disclosed to employees, the fact that you, as a highly compensated employee, are the only full-time employee who has received the Schierholz Benefit over an extended period, presents a strong argument that this benefit has not been effectively available to a nondiscriminatory group of employees.

(ii) *Current Availability.* In order to satisfy the nondiscrimination requirements, a benefit must also be "currently available" to a group of employees that would satisfy one of the minimum coverage tests of Code Section 410(b). In general, the "current availability" of a benefit such as the Schierholz Benefit, which is subject to a condition, is determined based on current facts and circumstances (*e.g.*, the participant's current compensation, accrued benefit, position, etc.). If a benefit is subject to an eligibility condition, only those who satisfy that condition would be considered to benefit.

The Schierholz Benefit could be viewed either as (A) a benefit to which a participant is entitled after attaining his Normal Retirement Date or (B) a benefit to which a participant is entitled after terminating employment on or after his Normal Retire-

ment Date, commencing to receive a pension benefit, subsequently becoming reemployed and then receiving both pension and salary. Under alternative (A), the current availability requirements may well be met, since a precondition to a benefit that is based on age or service is disregarded in determining whether the benefit is currently available in a nondiscriminatory manner (Reg. Section 1.401(a)(4)–4(b)(2)(ii)(A)). However, if the IRS were to view the Schierholz Benefit in light of alternative (B), as the Plan Administrator believes is likely, the current availability requirement would not be met. A precondition such as "reemployment after retirement" may not be disregarded in determining whether a benefit is currently available in a nondiscriminatory manner (Reg. Section 1.401(a)(4)–4(b)(2)(ii) and (iii)). Taking into account such a precondition, it is highly unlikely that it can be demonstrated that the Schierholz Benefit was available in a nondiscriminatory manner to a group of employees which would satisfy the minimum coverage requirements.

(c) *Prior Regulations.* The IRS has issued a directive to its field offices concerning "reasonable, good faith" compliance with certain qualification requirements for the transition plan years 1989 to 1993 (*see Daily Tax Report,* June 15, 1992, pp. L–1 to L–6). Under this directive, if the Goldman Plan were to comply with the final Code Section 401(a)(4) regulations discussed above, the Code Section 401(a)(4) requirements would be deemed satisfied.

However, the Goldman Plan may also satisfy Code Section 401(a)(4) during the transition years by complying with the regulations promulgated under Code Section 401(a)(4) on July 8, 1988 (the "1988 Regulations"). The 1988 Regulations are generally applicable for plan years commencing on or after January 1, 1989, and provide guidance on the applicability of Code Section 401(a)(4) to the availability of benefits. According to the directive, plans which do not comply with the final regulations must comply with the 1988 Regulations; the reasonable, good faith standard of interpretation of Code Section 401(a)(4) *does not* apply with respect to the

availability of benefits during the transition years.

The 1988 Regulations are similar to the final regulations in that benefits must be both "currently" and "effectively" available to a nondiscriminatory group of employees (Reg. Section 1.401(a)–4(Q/A–2)(a)(1)). The final regulations follow the 1988 Regulations in all material respects; the final regulations merely elaborate upon the concepts set forth in the 1988 Regulations. Hence, the same problems arise with respect to satisfying the nondiscrimination requirements, especially the effective availability requirements, under the 1988 Regulations as arise under the final regulations. In fact, the examples illustrating the effective availability requirements under the 1988 Regulations are virtually identical to those under the final regulations (see Reg. Section 1.401(a)–4(Q/A–2)(a)(3)(ii) (Examples 2 and 3)).

Moreover, the 1988 Regulations may actually be more difficult to satisfy in that they do not provide a Special Rule for plans acquired in a merger or acquisition; hence, the current and effective availability requirements would have to be satisfied for all plan years following the acquisition, not just for that period immediately prior to and following the acquisition.

(d) *"Savings Clause."* The Chemtech Plan explicitly provides that the Plan fiduciaries must operate the Plan in a manner that will not jeopardize its qualified status under Code Section 401(a) (see Chemtech Plan Section 1.3). In light of the above discussion, this clause requires the prohibition or suspension of the Schierholz Benefit.

3. *Schierholz Benefit is Not Protected Under Code Section 411(d)(6).*

As mentioned above, we have determined that the Schierholz Benefit is not protected under Code Section 411(d)(6), which, in general, prohibits the reduction or elimination of accrued benefits under a plan. Even assuming that the Schierholz Benefit could be described as an accrued benefit (which the Plan Administrator disputes), the elimination of the Schierholz Benefit would not be prohibited by Code Section 411(d)(6) for the following reasons:

A plan may be amended to reduce or eliminate a Code Section 411(d)(6) protected benefit if the following conditions are satisfied (Reg. Section 1.411(d)–4(Q/A–2)(b)(2)(i)): (i) the amendment constitutes a timely compliance with a change in law affecting plan qualification (e.g., the regulations under Code Section 401(a)(4) clarifying the nondiscrimination standards); (ii) there is an exercise of Code Section 7805(b) relief by the Commissioner; and (iii) the elimination or reduction of benefit is made only to the extent necessary to enable a plan to maintain its qualified status. Suspension of the Schierholz Benefit is consistent with requirements (i) and (iii); requirement (ii) is inapplicable, as there is no need for Code Section 7805(b) relief since a plan may still be amended during the Code Section 401(b) remedial amendment period.

The last sentence of Reg. Section 1.411(d)–4(Q/A–2)(b)(2)(i) provides that the elimination or reduction of a Code Section 411(d)(6) protected benefit will not be treated as necessary if it is possible through other modifications to the plan (e.g., by expanding the availability of an optional form of benefit to additional employees) to satisfy the applicable qualification requirements. It could be argued, however, that the reason for the elimination of the Schierholz Benefit is to comply with Code Section 401(a)(4), and that a retroactive expansion of the availability of the Schierholz Benefit would, at this late date, be administratively infeasible and impractical (and may not, in any event, satisfy the current and effective availability requirements). Even if the Schierholz Benefit were now made retroactively available to a nondiscriminatory group of employees, such action might very well be interpreted as being undertaken merely to protect Mr. Schierholz's receipt of the Schierholz Benefit.

4. *Suspension of Schierholz Benefit Not Unlawful.*

The suspension of the Schierholz Benefit is not undertaken with any intention of discriminating against you, as you have alleged, and is wholly unrelated to your involvement in litigation concerning the merger of the

Chemtech Plan and the Goldman Plan. As you may recall, the Plan Administrator began its inquiries about the Schierholz Benefit well before the commencement of such litigation. All of the Plan Administrator's actions in connection with this matter have been undertaken solely because of its fiduciary responsibilities to the Goldman Plan.

5. *Additional Issue—Amount of Benefit.*

Our review of documentation in connection with this matter revealed that Chemtech Plan Section 7.1 provided that, if a retirement benefit is paid in any form other than a straight life annuity, the benefit paid cannot exceed the actuarial equivalent of the maximum annual benefit payable under a straight life annuity. Since you elected to receive your retirement benefit in the form of a qualified joint and survivor annuity, the amount of such benefit should have been reduced pursuant to the terms of Chemtech Plan Section 7.1. Apparently, such a reduction was never made and you have been receiving unreduced joint and survivor annuity payments in direct violation of the terms of the Chemtech Plan. We will continue to review this matter and will inform you of any corrective action which is necessary.

\* \* \* \* \* \*

If you have any comments concerning this denial of benefit, you may contact the undersigned at (617) 338–1200.

Sincerely,

Plan Administrator of the
Goldman Financial Group,
Incorporated Retirement Plan
By: /s/ <u>Kathleen A. Keating</u>
Kathleen A. Keating