Robert HOBBS, Plaintiff,

v.

John L. LEWIS, Josephine Roche, and Charles A. Owen, Trustees of the United Mine Workers of America Welfare and Retirement Fund, Defendants.

Civ. A. No. 974–56.

United States District Court
District of Columbia.

Feb. 24, 1958.

Douglas A. Clark, Washington, D. C., Robert C. McEwan, David Tom Walker, Chattanooga, Tenn., for plaintiff.

Edward L. Carey, Harold H. Bacon, Charles L. Widman, Washington, D. C., for defendants.

PINE, District Judge.

This is an action for a judgment declaring that plaintiff is entitled to pension benefits under the National Bituminous Coal Wage Agreement of 1950 and the trust known as the United Mine Workers of America Welfare and Retirement Fund, and for a money judgment against the Trustees of this Fund in the amount of $100 per month from the date of plaintiff's eligibility to benefits to the date of the judgment.

The Wage Agreement, above referred to, provides in brief that there shall be paid into a fund by each coal operator signatory thereto a sum of money per ton of coal produced, as did the preceding similar agreements; that the fund shall be operated by a Board of Trustees, shall be an irrevocable trust created pursuant to the Labor Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq., and shall endure so long as the purposes for its creation shall exist, which, among others, is the payment of pensions on retirement to employees of the operators; and that the Trustees shall have full authority within the provisions of the Labor Management Relations Act, 1947, in respect of coverage, eligibility, etc. Pursuant thereto the Trustees adopted a Resolution known as No. 10, providing regulations covering the payment of pensions, including eligibility.

The documentary evidence discloses the following facts: Plaintiff signed an application for a pension under this Fund dated April 1, 1949, and thereafter transmitted the same to the office of the Fund. By letter dated June 6, 1950, one of the Trustees of the Fund advised the plaintiff that they would look into his case and notify him at a later date as to their findings. By letter dated November 16, 1950, a director of a Compensation Department of the United Mine Workers of America advised plaintiff, among other things, that to be eligible for a pension under the Fund plaintiff was required to be a member in good standing of the United Mine Workers of America; that a special Membership Committee had ruled that he had lost his membership, and that the only way he could become a current member was to obtain employment and join the Union. In this connection it should be stated that defendants now concede that membership is not a requisite to eligibility and lack of membership is not one of their defenses. Finally, by letter dated June 12, 1951, counsel for the trustees notified the attorney for plaintiff, who apparently had made inquiry, that plaintiff had failed to meet the requirements for a pension and was not eligible therefor. No further explanation was given plaintiff, nor was there any request for further information.

Thereafter plaintiff filed suit in a state court of Tennessee, which was dismissed on the ground that the court was without jurisdiction since the situs of the trust was in the District of Columbia, and in

1954 the judgment of dismissal was affirmed. On March 6, 1956 he filed the present action in this court.

Plaintiff's "Application for Pension" is on a form prepared for the purpose by defendants. It requires detailed information, including the applicant's employment record and a certificate of a local union. In his application he listed his employment record from 1902 through 1948, and the officers of his local union executed the certificate in which they certified that the facts stated therein were true and correct to the best of their knowledge and belief, that the applicant was a member of the local union and had been a member thereof since June 16, 1946, and that to their knowledge he had worked regularly in the coal industry. Also, as part of the application, there was an authorization to the Social Security Administration to make available to the Welfare and Retirement Fund any information contained in plaintiff's Social Security account file.

When the case came on for hearing, the only testimony offered by plaintiff was his own, and on cross-examination it showed that his employment record as stated in his application conflicted with the Social Security records in respect of his statement that he worked for W. N. Mayse from February 1937 to September 1947. It then appeared that this conflict was the principal basis for the finding by the trustees that he was not eligible for a pension, although that reason, as above stated, was never communicated to him before this hearing.

Plaintiff is nearly illiterate, ill from arthritis and has failing eyesight, and his memory appears to be uncertain in many respects. His application was prepared by a storekeeper. Under these circumstances, I granted a continuance to give him an opportunity to take depositions or submit documentary evidence which might establish his employment record.

When the case came on again for hearing, depositions taken by plaintiff in the interim were received in evidence, and defendants also offered evidence in respect of his employment. From this, along with his own testimony, it appears without contradiction that, except for a short absence in a coal mining operation in Georgia, he has lived throughout his entire life in the coal mining region in and about Dunlap, Tennessee, and that coal mining, either as a digger or in affiliated activities such as mule driver, has been practically his sole source of livelihood.

Whether he has met the eligibility requirements of the trust, which I shall hereafter discuss, depends upon the totality of the evidence. The plaintiff contends that he has, and the defendant contends that he is and has been a drunkard and has only worked sporadically in the mines.

None of the witnesses who testified by deposition after the continuance had records of any kind and relied solely on their memory. Most of them have little education, have devoted their lives to work with their hands in the mines, and are men whose whole background is foreign to the keeping of records. I, therefore, place little weight on this failure to produce records, which is stressed by defendants as one of the bases for considering their testimony to be suspect. In the case of those witnesses who testified that they had kept records, but that they had been lost or destroyed, the failure to produce would seem to be satisfactorily explained when it is considered that it is not reasonably to be expected that they would be preserved over the span of years here involved. Even the most prudent business man could hardly be expected to be answerable at the risk of having his testimony discounted for failing to preserve records 15 or 20 or more years old. The records of the Social Security Administration were received in evidence and have been given the credence they deserve, although it might be questionable whether in the case of small operators, certainly in the first years of Social Security, the reports were faithfully made, and the lack of Social Security records for plaintiff also might be explained by

the leasing and subcontracting system which was in vogue and raised doubts as to the identity of the employer. These considerations are mentioned as bearing on whether plaintiff has established his eligibility for a pension under the trust, as set forth in Resolution 10, above mentioned, which I shall now discuss.

The first requirement is that the applicant must have attained the age of 60 years or over at the time of his application for pension. On this there is no dispute.

The second requirement is that he must have retired or permanently ceased work in the bituminous coal industry after May 28, 1946. On this there is no dispute.

The third requirement is that the applicant must have been employed for a period of at least one year in the bituminous coal industry immediately preceding his retirement. The Social Security records disclose, and defendants concede, that plaintiff retired at the end of the first quarter of 1949 instead of at the end of the fourth quarter of 1948 as set forth in his application, and that he was employed by the Williams Coal Company and the Perkins Coal Company for the second quarter of 1948, and for W. N. Mayse for the third and fourth quarters of 1948 and the first quarter of 1949. This establishes an overall employment in the bituminous coal industry for at least one year immediately preceding his retirement. The Resolution does not define "one year" in terms of work-days or otherwise in respect of this requirement, and there has been no showing of any administrative interpretation by the Trustees of the meaning of the term. It is not made specific by words indicating that the employment must be continuous and uninterrupted, and that hardly could have been intended in view of shutdowns, illness, etc. A reasonable interpretation would seem to be that it means substantial employment during the year, taking into consideration the work opportunities and physical capacity of the applicant. Plaintiff's wages equalled $579.85 for the year preceding his retirement.

This would appear to be sufficient under the circumstances of plaintiff's case to justify a finding that he has met the conditions of this third requirement.

The fourth requirement is that he has completed 20 years service in the coal industry, a year of service being defined under this requirement as one in which applicant has for more than 6 months therein worked in a job classified in any national coal wage agreement. There is no dispute that he worked in such a job. The question is, has he completed 20 years service in the industry? Weighing the evidence, I find that it discloses that he worked in the industry at least 26 years prior to the advent of Social Security, that is during the period between 1902 or 1904, when he started work in the industry, and 1937 when Social Security became effective, 42 U.S.C.A. § 301 et seq. Therefore he had an overall of more than 20 years prior to the beginning of Social Security in 1937, but in addition the testimony showed that he worked approximately 6 years between 1937 and 1949 and this is corroborated to some extent by the Social Security records from 1943 to 1949. Considering the evidence as a whole and bearing in mind the requirement that he need only work in excess of 6 months in any one calendar year to establish a year of the 20-year requirement, I reach the conclusion that he has, at least, during his 40-odd years of labor in practically no other occupation than that of a miner, completed 20 years of service in the coal industry.

That he made misstatements in his application has been established, but I attribute this to his lack of memory and the difficulties in determining in some instances who was his employer because of the lease and subcontracting system before mentioned, and not to willful falsification on his part. In any event he has abandoned the application, and now claims that he is entitled to the relief sought on the basis of the showing made at this trial. It would therefore appear, and I find, that he has established by a preponderance of the evidence his eligi-

bility for a pension under these requirements.

Resolution 10 also provides that the regulations contained therein shall govern the payment of pensions to employees of the coal operators signatory to the 1950 National Bituminous Coal Wage Agreement, although this Fund was set up several years prior thereto; but by stipulation his last employer, namely, W. N. Mayse, was a signatory to this agreement, as well as to its predecessor, the 1948 agreement, effective during plaintiff's last employment in the industry. Plaintiff therefore comes within this requirement of the Resolution.

■ However, defendants also contended in final argument, although not expressly included in their pleadings as a defense, that the Fund is a charitable trust and that the court cannot interfere in its decisions unless the Trustees act arbitrarily or unreasonably. In the first place, I do not agree that this Fund is a charitable trust, involving mere gratuities, but am of the opinion that money paid from it is in the nature of a fringe benefit, a term of recent origin, or deferred, contingent compensation which the employees of signatories may be entitled to receive in addition to their wages, and which was procured for them by their bargaining agent, the United Mine Workers of America. This conclusion is not contrary to the provision in the Wage Agreement that the moneys paid into the Fund shall not be deemed wages nor liable for debts, etc., for to me this provision only relates to current wages and makes them immune from deductions by the employer or attachment for debts. Cf. Inland Steel Co. v. National Labor Relations Board, 7 Cir., 1948, 170 F.2d 247, 12 A.L.R.2d 240, certiorari denied 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112; Hooker v. Hoey, D.C., 27 F.Supp. 489, 490, affirmed, 2 Cir., 107 F.2d 1016; Hurd v. Illinois Bell Telephone Co., D.C., 136 F.Supp. 125, affirmed, 7 Cir., 234 F.2d 942. An employee therefore has a contractual right to this pension if and when he comes within the regulations prescribed by the Trustees.

■ But, say the Trustees, plaintiff may look only to them for a determination of this right to a pension, absent arbitrary or unreasonable acts on their part, and they cite in this connection the Wage Agreement, which grants them full authority in respect of coverage, eligibility, amounts of benefits, etc. Does that mean that an applicant for a pension may never look beyond the Trustees to the Courts for the enforcement of his contractual right, except under the circumstances mentioned? I do not think so, but on the contrary believe that the full authority given to the Trustees comprehends the right to set up requirements for eligibility, etc., which they have done by Resolution 10, and which are not challenged by plaintiff, and to pass upon applications for pension when made and determine whether they come within the requirements. However, I do not believe it comprehends the deprivation of an applicant's right of recourse to the Courts when he disagrees with the determination of the Trustees on this point, regardless of whether they acted arbitrarily or unreasonably. Neither the Resolution, nor the Wage Agreement which is the source of the authority, contemplates such deprivation, because in them there is no provision that the determination of the Trustees as to whether an applicant comes within their regulations shall be final and conclusive, as is found in those instances where recourse to the Courts has been denied. Cf. Hurd v. Illinois Bell Telephone Co., supra, 136 F.Supp. at page 154; Menke v. Thompson, 140 F.2d 786, 791.

In reaching this conclusion, I have not overlooked Van Horn v. Lewis, D.C., 79 F.Supp. 541, where the Court in its conclusions of law states that the Retirement Fund of 1947, predecessor to the one here involved, constitutes a beneficial charitable trust. The issues involved in that case were whether the Wage Agreement of 1947 violated the Labor Management Relations Act, 1947 and whether the Court would interfere with the administration of this trust by a majority of the Trustees, at the behest of the minority,

where there was disagreement between them. The issues, therefore, in the Van Horn case differ from those involved herein, and in addition I question whether the conclusion of law that the Fund is a charitable trust was necessary to the decision, particularly as the Labor Management Relations Act, 1947 makes no mention of such a trust, nor does the Wage Agreement herein.

But assuming the Fund to be a charitable trust, there is ample evidence of arbitrary and unreasonable acts by the Trustees, if they be considered a sine qua non to recovery by plaintiff as contended by defendants. They are shown by the following facts: Resolution 10 provides that certification by a local union that an applicant served in the coal industry shall be deemed satisfactory proof of service for the periods covered by such statements. Notwithstanding this provision in the Resolution, and the certification by the union, the Trustees rejected plaintiff's application upon ascertaining that the Social Security records did not bear out, in part, plaintiff's statement of employment. Moreover, they did not call upon the applicant for an explanation of the apparent discrepancy, nor did they make an independent investigation of their own by communicating with the local union or otherwise. Instead, plaintiff was first informed that membership in the United Mine Workers was a requisite to eligibility, that he had lost his membership, and that the only way he could become a current member was to obtain employment and join the United Mine Workers, the former of which was an impossibility because of plaintiff's age and physical condition. Defendants now concede that this information was erroneous and contend it was unauthorized, having been written by a director of a Compensation Department of the United Mine Workers and not an officer of the Fund,

but nevertheless that was the information plaintiff received when he made inquiry through an attorney, during the pendency of his application for a pension. He was next informed by the counsel for the Fund that he had failed to meet the requirements without any explanation or request for further information, as above stated. To me the foregoing equates unreasonable and arbitrary acts on the part of the Trustees who are acting in a fiduciary capacity and have a high duty to make certain that all those who are eligible for a pension receive it, and all those who are not eligible are denied it. It has been argued that to expect the trustees to do more than reject, as they did, would shift the burden of proof which is placed upon the applicant by Resolution 10. With this contention I do not agree, because to me all that I suggest should reasonably have been done is to shift the burden of going forward on the trustees when confronted with the situation above set forth, and not summarily to reject the application.

Judgment therefore will be entered declaring that plaintiff is entitled to his pension, and for a money judgment for the amount of accrued pension since the institution of suit. He is not entitled to any pension prior thereto because he has abandoned his application containing the misstatements above set forth and his claim is now based entirely on the evidence adduced at this trial.

It thus becomes unnecessary to discuss the defense of the statute of limitations, also raised as a defense, because the payment of a pension is a continuing obligation and no back payments before institution of suit are included in the finding herein, for the reason stated.

Counsel will submit judgment accordingly. This memorandum makes unnecessary the submission of further findings of fact and conclusions of law.