**Marion Marshall RUTH, Plaintiff,**

v.

**John L. LEWIS et al., Defendants.**

**Civ. A. No. 973–56.**

United States District Court
District of Columbia,
Civil Division.

Aug. 19, 1958.

YOUNGDAHL, District Judge.

This is an action for a judgment declaring that plaintiff is entitled to pension benefits under the National Bituminous Coal Wage Agreement of 1950 and the trust known as the United Mine Workers of America Welfare and Retirement Fund, and for a money judgment against the Trustees of the Fund in the amount of $100 per month from the date of plaintiff's eligibility to benefits to the date of judgment.

The Wage Agreement provides that there shall be paid by each coal operator signatory a sum of money measured by the amount of coal produced and that the fund thus created will be an irrevocable trust created pursuant to the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., to endure so long as the purposes for its creation—which among others is the payment of pensions to employees on retirement—still exist. The fund will be operated by a Board of Trustees and the Trustees shall have full authority to determine coverage of the fund. The trustees, in accordance with this last provision, adopted Resolution 10 [1] providing regulations covering the administration of the payment of pensions. These regulations, insofar as they relate here, provide that to be eligible for a pension the applicant (1) must be at least sixty years of age; (2) have retired by permanently ceasing work in the coal industry after May 28, 1946; (3) have been employed for a period of one year in coal industry immediately preceding his retirement; (4) completed twenty years' service in the coal industry.

The question presented in this case is solely whether plaintiff qualifies with respect to regulations 3 and 4 as numbered above. The regulations place the burden of proving eligibility on the applicant. Certification by the Local Union of the United Mine Workers is considered adequate proof, or when this cannot be had, statement of persons who know

Douglas Clark, Washington, D. C., for plaintiff.

Edward L. Carey, Val. J. Mitch, Charles L. Widman, Harold H. Bacon, Washington, D. C., for defendant.

1. Resolution 10 was adopted under the 1950 trust agreement. The 1947 fund went bankrupt and is no longer in existence. Hence plaintiff is limited to the 1950 fund for his pension.

from their own personal knowledge of applicant's service is also considered satisfactory.

Plaintiff filed an application for a pension which was received by the Fund May 15, 1949. In this application he listed some seven mining companies for which he worked from 1885 to 1892, from 1918 to 1933, and from 1940 to December, 1948. Plaintiff was notified that his claim was rejected on June 27, 1949.

Plaintiff has brought this suit to have the Court certify his eligibility under the fund.

The Court heard testimony on this issue and, after the presentation of plaintiff's case, was asked by plaintiff not to consider the application and the dates listed therein but to decide the question solely upon the evidence adduced in open court.

This request by the plaintiff was based upon the contradictions which were brought out as a result of his testimony and that of his daughter and the statements contained in the application. The evidence disclosed that the application was filled out by someone other than the plaintiff. Plaintiff himself is illiterate, 87 years of age, of failing health, and just recovering from a stroke. His memory—whatever it may have been when the application was filed—is now almost completely gone. He could not recall with certainty any dates or names.

Plaintiff's case rested in great measure on the testimony of his daughter, also elderly, who recollected with some degree of accuracy the occupational activities of her father for the last forty years. She testified that her father worked continuously—with the exception of six months—for the Tennessee Coal & Iron Company from 1914, when they first moved to Whitwell, until 1921 or 1923 when they moved to Signal Mountain. From 1924 to 1928 her father worked with her husband and operated a mine for a Fred Bryan. From 1931 to 1936, plaintiff worked his own mine—this would not be given credit under the terms

of the Welfare Fund—and then in 1937 he worked a year for George Clark. Following that, for the next six years, she testified her father worked for a number of people in many small mines located in that area. She did not know the names of the mines or the employers during this last period.

If this testimony is to be given credence, and it is the most definite brought forward by the plaintiff, then the application form must be in error. On the application plaintiff lists his employment with the Tennessee Coal & Iron Company from 1924 to 1933 and in other respects contradicts the testimony of his daughter.

Defendant opposed the motion, arguing that the Court's review is of the trustees' action, and since all that was before the trustees was the application, the Court is limited to pursuing the question of the truth or falsity of that document.

Defendant introduced numerous witnesses who knew the plaintiff with varying degrees of familiarity during various periods of his life and who testified—in sum—that they knew him to do little mining, but rather to do odd jobs such as well-digging, door-to-door selling, and automobile repair work. The records of the Tennessee Coal & Iron Company disclosed that plaintiff worked there from 1914 to 1917 and no more.

Similarly, the evidence as to whether plaintiff worked the last year before retirement so as to qualify under Resolution 10 of the fund is contradictory. Plaintiff's son corroborated plaintiff that he did. The records and checks introduced into evidence would indicate only two or three months' service. This piece of evidence was re-enforced by one of the witnesses for the defendant who worked in the Vaughan Coal Company during this period.

The problem of the administration of pension plans such as the one involved here is still very much unsettled in the law. It has recently been the subject of much critical comment in legal periodi-

cals.[2] Courts have divided on the amount of judicial review available in this situation.[3] They are also divided as to what type of trust is here involved.[4]

■ This Court is of the opinion that despite the contractual provisions in the trust instrument giving absolute discretion to determine eligibility to the fund, judicial review does lie where applicants can show a breach of fiduciary trust, fraud or arbitrary action. In this case, plaintiff is in the position of a beneficiary of a noncharitable trust, not the possessor of a contractual right.

The Court's review, therefore, is limited to insuring the proper administration by the Trustees of the Fund. It is not the Court's function to run the trust, but rather to see that it is run within the terms of the agreement in such a way that the benefits are properly distributed in order to protect beneficiaries from arbitrary or capricious action.

■ Applying these principles to the case at bar, it is clear to the Court that plaintiff has shown no violation by the Trustees of their fiduciary obligation. All that was before the Trustees was the application which is concededly inaccurate and could not be the basis of a granting of a pension to plaintiff. Plaintiff asks, however, the Court to decide the case before the Trustees decide the validity of any new application based on the facts now attested to.

■ Unless the facts are so apparent that to return the case to the Trustees of the Fund would be a useless formality, this Court cannot take upon itself the decision to determine eligibility in the first instance. The legal reasons for this have been stated above and are the same in the review by a Court of any trustee's action. There is also a practical reason for this holding. The trust here involved is quite large, consisting of over 65,000 members. It is also only one of many of this type now popular in industries throughout the country. This case has taken over two weeks to be heard because of the request made by the applicant, and has forced the Trustees to go to great expense to attempt to uncover the true facts. In these circumstances the Court believes it is administratively simpler and more practical to limit the Court's review to the application, the evidence of its support, and in the light of this, whether the Trustees acted in accordance with their fiduciary obligation and properly exercised their discretion.

The Court feels, in view of the evidence before it, that plaintiff should submit a new application to the Trustees. The complaint is dismissed without prejudice to the filing of a new application based upon the record in this case and to judicial review of the Trustees' determination, as outlined above.

Because of the above disposition, the Court expresses no opinion upon the application of the statute of limitations to this case.

Counsel will present the appropriate order.

**2.** Regulation of Employee Benefit Plan: Activate the Law of Trusts, 8 Stanford Law Review 655 (1956); Note, Taft-Hartley Regulation of Employer Payments to Union Representatives: Bribery, Extortion and Welfare Funds under Section 302, 67 Yale L.J. 732 (1958); Protection of Beneficiaries Under Employee Benefit Plans, 58 Col.L.Rev. 78 (1958); Note, Legal Problems of Private Pension Plans, 70 Harv.L.Rev. 490 (1957).

**3.** See the annotation in 42 A.L.R.2d 461, 474; also the more recent cases of Hurd v. Illinois Bell Telephone Co., D.C.1955, 136 F.Supp. 125, 155 and Hobbs v. Lewis, D.C.1958, 159 F.Supp. 282.

**4.** Compare Hobbs v. Lewis, note 3 supra, 159 F.Supp. at page 286, and Van Horn v. Lewis, D.C.1948, 79 F.Supp. 541, 545.