William J. WELSH, Appellee/Cross–Appellant,

v.

**BURLINGTON NORTHERN, INC., EMPLOYEE BENEFITS PLAN, Appellant/Cross–Appellee.**

Nos. 94–1767, 94–2822.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1995.

Decided May 4, 1995.

---

William A. Brasher, St. Louis, MO, argued (Paul E. Littleton, on the brief), for appellant.

Steven B. Garner, Springfield, MO, argued (Jeffrey Bates, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In 1977, William Welsh injured his lower back at work. As a result, he was unable to continue his previous job with his employer, a railroad, but moved to another position with the company, making less money. He sued the railroad in state court in 1980 for damages resulting from that injury; the suit was based on the Federal Employers' Liability Act (FELA), *see* 45 U.S.C. §§ 51–60. In late 1984, a jury awarded him $500,000 on a general verdict. That award was affirmed on appeal. *See Welsh v. Burlington Northern Railroad Co.,* 719 S.W.2d 793 (Mo.Ct.App. 1986).

In late 1985, just before he turned 39 years old, Mr. Welsh became totally disabled from arachnoiditis (inflammation of membranes within the brain and spine), apparently caused by Pantopaque, a dye that was injected into his spine for diagnostic purposes at least three times after he injured his back. Arachnoiditis may cause "headache, epileptic seizures, blindness, or slowly progressive spastic paralysis (difficulties with movements due to increased muscle tension) affecting both legs or all four limbs." American Medical Association, *Encyclopedia of Medicine* at 128 (C. Clayman ed. 1989). One of the symptoms that Mr. Welsh suffers is bowel incontinence, necessitating the use of an adult diaper. He also suffers from "intractable pain," according to an evaluation performed in 1991. There is "no effective treatment" for arachnoiditis. American Medical Association, *Encyclopedia* at 128.

The railroad's health insurance plan paid Mr. Welsh disability benefits based on the arachnoiditis until mid–1987. At that time, the railroad paid the amount of the FELA award; the health insurance plan then informed Mr. Welsh that no further disability payments would be made. The basis for that decision was the health insurance plan's contention that under the terms of the disability benefits contract, the health insurance plan was entitled to use the FELA award received by Mr. Welsh to offset the amounts due to him under the disability benefits contract. (The briefs do not say so explicitly, but we infer that the total amount of disability benefits that could ever be due to Mr. Welsh—based on his projected entitlement to them until age 65—is less than the amount of the FELA award.)

In late 1992, Mr. Welsh sued the health insurance plan in federal district court, alleging that it was improper for the health insurance plan to use the FELA award as a setoff to the disability benefits that he was entitled to receive. On cross-motions for summary judgment, the district court granted summary judgment to Mr. Welsh in late 1993, holding that the arachnoiditis "was an independent cause of [Mr. Welsh's] disability"—in other words, that Mr. Welsh's back injury was not the cause of his disability—and therefore that the health insurance plan was not entitled to use the FELA award as a setoff to the amounts due to Mr. Welsh under the disability benefits contract. In early 1994, the district court entered judgment for Mr. Welsh but declined to award attorney's fees to him.

A few months later, the district court amended the judgment to allow certain retirement benefits to be deducted from the disability payments due to Mr. Welsh. The district court calculated the amount of past disability benefits due and, in addition, declared that Mr. Welsh was "entitled to receive disability benefits so long as he is disabled or until he reaches the age of 65, whichever occurs first."

The health insurance plan appeals the grant of summary judgment to Mr. Welsh, arguing that genuine issues of material fact exist that preclude summary judgment for Mr. Welsh, see Fed.R.Civ.P. 56(c), and that the law requires summary judgment for the health insurance plan instead. The health insurance plan also asserts that the district court should not have calculated the disability payments due, for either the past or the future, but should have left those determinations to the health insurance plan. Mr. Welsh cross-appeals the district court's calculation of the disability payments due, arguing that too much was deducted for the retirement benefits. We affirm the district court with respect to all of those issues. Mr. Welsh also cross-appeals the district court's refusal to grant him attorney's fees. We reverse and remand for proceedings consistent with this opinion with respect to the question of attorney's fees.

I.

The disability benefits contract in this case is subject to the provisions of the Employee Retirement Income Security Act (ERISA), see 29 U.S.C. §§ 1001–1461. The district court held that the disability benefits contract did not give the health insurance plan the discretion to construe the terms of the contract and therefore that judicial review had to be de novo with respect to the health insurance plan's determination that under the setoff provision of that contract, the FELA award could be used to reduce the disability payments due. See, e.g., Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The health insurance plan does not appear seriously to challenge that holding by the district court, and, indeed, we believe that that holding is correct.

The contract for the short-term total disability plan provides that the benefits paid for short-term disability "will be decreased by ... [a]ny disability benefit paid or payable under any Workmen's Compensation or Occupational Disease Act or the Federal Employer's Liability Act." The contract for the long-term total disability plan provides, in the section dealing with monthly income benefits, that the benefits paid "shall be reduced by ... any amount paid or payable ... under any Worker's Compensation or Occupational or Non–Occupational Disease or Dis-

ability Act or similar law (including, but not limited to, loss of income payments under the Federal Employers Liability Act)." In this opinion, we refer to the two contracts collectively as the disability benefits contract (since both compensate for total disability).

The general essence of the health insurance plan's argument is that the disability benefits contract allows a setoff for *any* amount awarded to Mr. Welsh as a result of the FELA lawsuit, regardless of whether the injury at issue in the FELA lawsuit is the same as that for which Mr. Welsh receives the benefits under the long-term disability plan. The health insurance plan also argues, nonetheless, that the FELA lawsuit included claims for the arachnoiditis that Mr. Welsh now suffers and which entitles him to draw benefits under the long-term disability plan.

■ Specifically, the health insurance plan first contends that a genuine issue of material fact exists with respect to what caused Mr. Welsh's arachnoiditis. In light of the health insurance plan's insistence that Mr. Welsh's arachnoiditis was included in the injuries for which he received compensation in the FELA lawsuit, we do not quite understand the relevance of that argument. The only evidence of an alleged disputed fact cited by the health insurance plan, moreover, is the district court's characterization of the issue of whether the health insurance plan is entitled to a setoff as "a close question," "[a]bsent a finding that the dye used in myelograms caused the arachnoiditis which in turn caused the disability." We do not agree that the district court's reference in that regard demonstrates a genuine issue of material fact that precludes summary judgment for Mr. Welsh.

The health insurance plan further argues that the district court incorrectly concluded that Mr. Welsh's arachnoiditis is "an independent cause" of his disability rather than a consequence of his original back injury. The premise for the health insurance plan's argument in this regard is that because Mr. Welsh's arachnoiditis evidently resulted from materials used in tests to diagnose his back injury, case law interpreting FELA—the basis for his earlier lawsuit—would require a court to consider that arachnoiditis a consequence of his back injury itself. *See, e.g., Heater v. Chesapeake and Ohio Railway Co.,* 497 F.2d 1243, 1247 (7th Cir.1974), *cert. denied,* 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974) (plaintiff's heart attack after operation on plaintiff's back was compensable as caused by plaintiff's back injury); *Denver and Rio Grande Western Railroad Co. v. Conley,* 293 F.2d 612, 613 (10th Cir.1961) (plaintiff's death from pneumonia consequent to infection from tooth jarred loose during operation on plaintiff's back was compensable as caused by plaintiff's back injury); and *Kansas City Southern Railway Co. v. Justis,* 232 F.2d 267, 271–72 (5th Cir.1956), *cert. denied,* 352 U.S. 833, 77 S.Ct. 49, 1 L.Ed.2d 53 (1956) (aggravation of plaintiff's latent tuberculosis by pain, fatigue, worry, and anxiety consequent to undetected back fracture was compensable as caused by plaintiff's back injury). The conclusion that the health insurance plan draws from that premise is that, as a consequence, Mr. Welsh's arachnoiditis cannot be considered an independent injury under the terms of the disability benefits contract. To that argument Mr. Welsh's response is twofold.

First, Mr. Welsh argues that because the earlier award was based on FELA, the propriety of using the FELA award to offset his disability benefits is also controlled by that act. In other words, Mr. Welsh focuses not on whether the injuries entitling him to an award in the FELA lawsuit and under the disability benefits contract are the same but on whether the health insurance plan is entitled to a setoff under FELA, regardless of the characterization of the injuries.

One of the provisions of FELA declares void "[a]ny contract, ... the purpose or intent of which shall be to enable any [employer] to exempt itself from any liability created" by FELA, except that "in any action brought against any such [employer] under [FELA], such [employer] may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have paid to the injured employee ... on account of the injury ... for which said action was brought." *See* 45 U.S.C. § 55. Mr. Welsh asserts that that section precludes the use of the FELA award as a setoff to his

disability benefits, since to permit such a setoff would in effect allow the railroad to escape payment of that judgment (the railroad being the source of both the FELA award and all money paid under the disability benefits contract).

This circuit has considered such an argument in a case where the terms of the disability benefits contract at issue were virtually identical to those in this case. *See Clark v. Burlington Northern, Inc.,* 726 F.2d 448, 451 n. 3 (8th Cir.1984). In that case, the court held that such contract terms did not exempt the railroad from liability but instead came within the exception specified in the statute. *Id.* at 451. The court therefore allowed a setoff in that case. *Id.* We do not feel, however, that that case controls this one, because in that case there was evidently no dispute with respect to whether the plaintiff claimed damages on the same basis in the lawsuit as under the disability benefits contract.

That distinction leads us to Mr. Welsh's second response to the health insurance plan's argument that the FELA definition of a compensable injury controls the outcome of this case. Mr. Welsh contends that FELA requires that in order for a setoff to be applied, the damages in the FELA lawsuit and the payments under the disability benefits contract must each be compensation for the same circumstances. Mr. Welsh further argues that in his FELA lawsuit, the damages were for loss of wages due to inability to continue work in a position that carried as high a salary as he had been earning before he injured his back (partial disability), whereas under the disability benefits contract, the compensation he receives is for loss of wages due to his inability to work at all (total disability). That distinction—between partial disability engendering a diminished earning capacity, and total disability engendering a complete absence of earning capacity—exists, Mr. Welsh asserts, regardless of whether his arachnoiditis would have to be considered the same injury as his back problems for purposes of determining compensability under FELA.

■ We find that argument to be a persuasive one. That is because the purpose of the setoff provision in FELA is to prevent the imposition upon an employer of double liability for one loss. *See, e.g., Folkestad v. Burlington Northern, Inc.,* 813 F.2d 1377, 1380, 1382–83 (9th Cir.1987), and *Clark,* 726 F.2d at 451. The relevant inquiry becomes, then, whether Mr. Welsh asked in his FELA lawsuit for damages associated with total disability (it is apparently undisputed that Mr. Welsh has been totally disabled from arachnoiditis since late 1985 and will permanently be so).

■ We have carefully examined all of the exhibits submitted with the parties' cross-motions for summary judgment. One orthopedic surgeon testified in the FELA trial that Mr. Welsh had "[p]ermanent damage to [his] sciatic nerve" and would have "a chronic painful back and leg for the rest of his life." Nothing in that surgeon's testimony, however, suggested that Mr. Welsh would eventually become totally disabled. A second orthopedic surgeon expressed his opinion that Mr. Welsh could "continue to work" and that nothing "would preclude [Mr. Welsh] from leading a normal, active life both at work and in his recreational pursuits."

A neurosurgeon testified that he did not expect Mr. Welsh to experience any "onset of paralysis or loss of bowel or bladder function or diminished sensation" and that nothing about Mr. Welsh's condition would "preclude him from leading a normal and useful and productive life." A neurologist testified that Mr. Welsh would "continue to have pain and limitation of activities in the future" but that "as far as leading a normal life" and "hold[ing] down a regular job," Mr. Welsh would "be able to do most things."

In the jury instructions conference for the FELA trial, Mr. Welsh's lawyer did ask for an instruction requesting damages related to future loss of wages, but only with respect to "the difference between what [Mr. Welsh] would earn as a Wireman [an electrician] and what he's earning as [a draftsman]"—in other words, for a diminished earning capacity rather than for a complete absence of earning capacity. Finally, in closing arguments in the FELA trial, although Mr. Welsh's lawyer did refer to "degenerative changes [in

Mr. Welsh's back] and the precursor to what's going to be future crippling arthritis" and asked the jury to "compensate [Mr. Welsh] for the next forty or fifty years of his life," the lawyer also made clear, in our view, that Mr. Welsh's future included the ability to hold a job of some kind. Indeed, the lawyer for the railroad stated, in making an objection, that "there's been no evidence that [Mr. Welsh] can't seek other employment."

The health insurance plan has not directed us to anything that would allow us reasonably to conclude that a genuine issue of material fact exists with respect to whether the question of eventual total disability was in controversy in Mr. Welsh's FELA lawsuit. For that reason, we agree with Mr. Welsh that no amount for such total disability was included in the damages awarded to him in the FELA trial. There is, therefore, no possibility that double liability for that total disability will be imposed upon the railroad and, accordingly, no basis under FELA for requiring a setoff.

■ The health insurance plan argues in addition, however, that regardless of its eligibility for a setoff under FELA, it is independently entitled to such a setoff under the terms of the disability benefits contract. In support, the health insurance plan points to the language in the contract stating that disability benefits are to be reduced by "any amount" paid to the employee under FELA. In other words, the health insurance plan seems to contend that if an employee has ever received or may ever receive *any* award under FELA, the amount of that award must be used as a setoff to payments received under the disability benefits contract, regardless of whether the basis for the FELA award is the same as the basis for the employee's entitlement to payments under the disability benefits contract. We consider that to be an entirely unreasonable construction of the contract, since it would be completely irrational to claim, for instance, a right to a setoff based on a FELA award for an injured foot, when the basis for an employee's entitlement to disability benefits was total incapacitation from a stroke unrelated in any way to the foot injury.

Perhaps anticipating our conclusion in regard to its arguments that "any amount" may be used as a setoff, the health insurance plan also argues, in the alternative, that because Mr. Welsh's arachnoiditis would be considered a consequence of his back injury under case law interpreting FELA, it is not unreasonable to construe the contract as requiring the application of the damages that he received in the FELA lawsuit for his back injury as a setoff to the payments that he receives under the disability benefits contract for his arachnoiditis. In response, Mr. Welsh concedes that he would be barred by the principle of *res judicata* from bringing another FELA lawsuit against the railroad to recover damages associated with his arachnoiditis. *See, e.g.,* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4409 at 77 (1981). He argues, however, that the purpose of setoff provisions in any contract (and, indeed, under FELA itself) is to prevent the imposition of double liability upon the employer for one loss by the employee. The concerns addressed by that proposition are different from the concerns implicated in *res judicata* rules—finality, the avoidance of inconsistent results from multiple litigation of the same question, and conservation of judicial resources. *See, e.g.,* Wright, Miller & Cooper, *Federal Practice* § 4403 at 11–22.

Mr. Welsh asserts, therefore, that although the back injury in his FELA lawsuit and the arachnoiditis may be considered the same injury under the law for *res judicata* purposes, they did not precipitate the same loss to him, *i.e.,* the back injury precipitated only a diminished earning capacity, whereas the arachnoiditis precipitated his inability to work at all. He contends, accordingly, that since there is no risk of the imposition of double liability upon the railroad for the same loss of the employee, the FELA award should not be used as a setoff to his disability payments under the contract. That argument, of course, is parallel to the one that Mr. Welsh offers with specific regard to the FELA setoff provision, *see* 45 U.S.C. § 55.

■ The disability benefits contract itself contains no language requiring "the same injury" to be the basis for a setoff of a FELA

award against disability payments. In the absence of such language, we hold that the most reasonable construction of that contract is that in order for a FELA award to be used as a setoff, that award must be for "the same loss," which does not necessarily mean for "the same injury." We also note that in a separate paragraph of the disability benefits contract dealing with lump-sum payments under FELA, the language of the contract is "on account of such disability," rather than "on account of such injury." While we do not rely on that paragraph as the basis for our construction of the setoff provision in the contract, we believe that it supports the distinction we draw between the partial disability compensated in Mr. Welsh's FELA lawsuit and the total disability that entitles him to payments under the contract.

■ Disability payments under the contract are calculated based on an employee's wages. In circumstances where an employee has received or may receive an award for lost wages on account of total disability in a lawsuit based on FELA (or any of the other statutes named in the setoff provision of the disability benefits contract), therefore, a setoff against the disability payments might be appropriate. In the context of this case, however, where the question of Mr. Welsh's eventual total disability was not at issue in the FELA trial, we hold that the contract does not authorize a setoff.

■ There is, moreover, an additional reason why a setoff is inappropriate in this case—because the railroad faces no double liability for any portion of Mr. Welsh's lost wages. In the FELA lawsuit, Mr. Welsh asked for damages for past and future pain and suffering and for lost wages on account of future diminished earning capacity. Because the jury in that trial rendered a general verdict, though, we have no way of knowing exactly what portion of the $500,000 award was for pain and suffering and what portion was for future lost wages. The lost wages at issue, however, were based on the difference between Mr. Welsh's previous salary as an electrician and his salary, after his back injury, as a draftsman. In contrast, his disability payments under the contract are based only on his draftsman's salary. We

observe, therefore, that the railroad faces no double liability for lost wages, because the disability payments are tied to a portion of Mr. Welsh's lost wages that was never sought in the FELA trial. We therefore affirm the district court's ruling that the health insurance plan is not entitled to offset Mr. Welsh's disability benefits with the award that he received in his lawsuit under FELA.

## II.

The health insurance plan challenges the district court's inclusion in its judgment of an amount for past disability benefits due and its declaration that Mr. Welsh is entitled to disability benefits in the future for as long as he is disabled or until he is 65 years old, whichever occurs first. Basically, the health insurance plan argues that *it* should be given the opportunity to calculate the amount of disability benefits due to Mr. Welsh, taking into account other setoffs allowed by the disability benefits contract. The health insurance plan specifically mentions possible setoffs of retirement benefits, social security disability benefits, and benefits under "any similar benefits law." We note, however, that when the health insurance plan moved in the district court to amend the original judgment, the only setoff asserted was for retirement benefits. We also note that in its motion to amend, the health insurance plan itself suggested that the district court could do the benefits calculations, based on proposals to be submitted by the parties.

Mr. Welsh argues that remand to the health insurance plan is both unnecessary and inappropriate. First, he contends, federal law authorizes the district court to award him the amounts due. Second, he asserts, in amending the original judgment, the district court used benefits calculations proposed by the health insurance plan. We agree with Mr. Welsh.

■ Federal law specifically provides that a beneficiary of a plan subject to ERISA may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, [and] to clarify his rights to future benefits under the

terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B). Manifestly included within that authorization, in our view, is the power for a district court to determine what benefits are due and to award them. *See, e.g., Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 697 (7th Cir.1992).

There is ample precedent, moreover, for a district court to "arrive at its own factual findings" when a health insurance plan has "made no factual determination in denying [contract] benefits." *Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 (7th Cir. 1994). In arriving at those findings, furthermore, the court "may permit the introduction of additional evidence necessary to enable it to make an informed ... judgment." *Id.; see also Donatelli v. Home Insurance Co.,* 992 F.2d 763, 765 (8th Cir.1993). "The district court is not required to remand the case," *Casey,* 32 F.3d at 1099 n. 4, especially when remand " 'would be a "useless formality," ' " *Wolfe v. J.C. Penney Company, Inc.,* 710 F.2d 388, 394 (7th Cir.1983), quoting *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 828 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), itself quoting *Ruth v. Lewis,* 166 F.Supp. 346, 349 (D.D.C.1958).

In light of the fact that the health insurance plan itself suggested that an acceptable course of action would be for the district court to calculate the payments due (and, accordingly, the appropriate setoff for retirement benefits), and in light of the fact that the health insurance plan itself proposed a calculation for the district court to use, we affirm the district court's inclusion in the judgment of an amount for past disability benefits due and its declaration that Mr. Welsh is entitled to disability benefits in the future for as long as he is disabled or until he is 65 years old, whichever occurs first (this latter declaration in accord both with the disability benefits contract and with the health insurance plan's own request). We note, in addition, that nothing prevents the health insurance plan from evaluating whether Mr. Welsh continues to be disabled in the future and continues to provide the documentation of that disability required under the terms of the contract. *See, e.g., Halpin,* 962 F.2d at 697.

### III.

The disability benefits contract provides that the monthly amount payable is 60 percent of the employee's basic monthly salary. The parties agree that Mr. Welsh's basic monthly salary for this purpose is $2,540 and that 60 percent of that amount is $1,524. The contract also provides that the monthly amount payable is to be reduced by "the primary amount of payment received under the Railroad Retirement Act" (RRA), *see* 45 U.S.C. §§ 231–231v. On cross-appeal, Mr. Welsh argues that in computing the setoff attributable to retirement benefits, the district court improperly included sums related to his minor children. We disagree.

The RRA provides retirement benefits for all railroad employees with more than 10 years of service. *See* 45 U.S.C. § 231a(a). Totally disabled railroad employees need not have reached a certain age to be eligible for those retirement benefits, which are essentially a disability pension. *See* 45 U.S.C. § 231a(a)(1)(v). For totally disabled railroad employees, a portion of those retirement benefits is equivalent, in terms of the requirements for eligibility and the amounts to be paid, to social security disability benefits. *See* 45 U.S.C. § 231b(a)(1), § 231b(a)(2); *see also* 42 U.S.C. § 423(a)(1).

The statutes relating to social security disability benefits define the "disability insurance benefit" as a person's "primary insurance amount" under social security old-age benefits. *See* 42 U.S.C. § 423(a)(2), § 415(b)(2)(A)(ii). The statutes with respect to social security old-age benefits compute the "primary insurance amount" as the sum of three figures, each tied to a different percentage of earnings from all employment. *See* 42 U.S.C. § 415(a)(1)(A). The federal agency that computes railroad retirement benefits calls the amount thus derived the tier I benefits. The parties agree that the tier I benefits for Mr. Welsh are $764 per month.

Under the RRA, however, retirement benefits also include a second amount that is

based solely on years of railroad employment. *See* 45 U.S.C. § 231b(b)(1). The federal agency that computes railroad retirement benefits calls that amount the tier II benefits. Mr. Welsh's tier II benefits, according to a notice from that agency, are $283 per month. The total of his tier I and tier II benefits is, therefore, $1,047 per month.

Mr. Welsh is actually entitled, however, to monthly retirement benefits in the amount of $1,146. That is because of a provision in the RRA that guarantees retirement benefits equivalent to those the employee would receive under the social security statutes, taking into account as well any minor children of the employee, *see* 45 U.S.C. § 231b(f)(3)(i), up to a certain maximum, *see* 42 U.S.C. § 403(a)(6)(B).

The disability benefits contract provides, with respect to reductions associated with retirement benefits, that "any benefits which are due to the presence of dependents will not reduce the Long Term Disability benefit unless the total benefit from all sources exceeds 80% of basic monthly salary." Mr. Welsh's total benefits do not exceed that amount. The dispute between Mr. Welsh and the health insurance plan with respect to the appropriate reduction attributable to retirement benefits, then, involves two questions that are interrelated. First, does the disability benefits contract language calling for a reduction by the "primary amount" of retirement benefits mean the "primary insurance amount" contained in the social security statutes (the tier I amount, $764) or the sum of both the tier I and tier II amounts ($1,047)?

■ The RRA itself contains no definition for a "primary amount," nor does the disability benefits contract. Retirement benefits under the RRA, however, may include not only the amount given to all railroad employees with more than 10 years of service, *see* 45 U.S.C. § 231a(a), but also a supplemental amount for certain railroad employees over 60 years old who have more than 25 years of service, *see* 45 U.S.C. § 231a(b).

■ We believe that the most reasonable interpretation of "the primary amount of payment received under the [RRA]"—the disability benefits contract language—is the basic retirement benefits amount that goes to all railroad employees with more than 10 years of service. *See* 45 U.S.C. § 231a(a). That is most sensible, in our view, because it recognizes the distinction between the basic retirement benefits available to all railroad employees with more than 10 years of service, *see id.*, and the supplemental retirement benefits available to a smaller number of those employees, *see* 45 U.S.C. § 231a(b); it also acknowledges the disability benefits contract requirement that the payment be "under the [RRA]." The "primary insurance amount" language from the social security statutes, *see* 42 U.S.C. § 415(a)(1)(A), not only is absent from the RRA but also differs from the disability benefits contract language of "primary amount of payment."

Under ordinary circumstances, the "primary amount of payment" would be the sum of both the tier I and tier II benefits. *See* 45 U.S.C. § 231b(a)(1), § 231b(a)(2), § 231b(b)(1). In Mr. Welsh's case, however, because he has minor children, the amount "received under the [RRA]" is greater than that sum. How much, then, are the "benefits ... due to the presence of dependents" that, under the disability benefits contract, must be excepted from the reduction attributable to retirement benefits?

If Mr. Welsh were receiving his benefits under social security, his "primary insurance amount" would be $764 (the same as his tier I amount under the RRA). If he were receiving his benefits under social security, those benefits would be increased by $382 because of his minor children. *See* 42 U.S.C. § 402(d)(1), § 402(d)(2). He argues, therefore, that because the RRA guarantees him the same benefits as he would receive under social security, he is entitled to except that $382 from the amount of retirement benefits that must be used to offset his disability benefits. In other words, he contends that the proper setoff attributable to his retirement benefits is $764 and, therefore, that the proper amount of disability benefits due to him under the contract is $760 per month

($1,524 monthly amount payable minus $764 social security "primary insurance amount" = $760).

The health insurance plan argues, in contrast, that because Mr. Welsh's "primary amount of payment received under the [RRA]" is the sum of both his tier I and tier II benefits ($1,047) and because he actually receives a higher amount ($1,146) only because of his minor children, the amount to be excepted is the difference between what he actually receives and what he would receive if he did not have minor children ($99). In other words, the health insurance plan contends that the proper setoff attributable to Mr. Welsh's retirement benefits is $1,047 and, therefore, that the proper amount of disability benefits due to him under the contract is $477 per month ($1,524 monthly amount payable minus $1,047 retirement benefit without minor children = $477). That is the amount that the district court awarded to him (we have rounded off all amounts, for simplicity's sake).

■ We believe that the health insurance plan has the better argument. That is because although a portion of Mr. Welsh's retirement benefits is calculated in the same way as the benefits he would receive under social security, he is not actually receiving benefits under social security; he is receiving them under the RRA. It makes more sense, in our view, to use a calculation that is based on the statute that actually entitles Mr. Welsh to the retirement benefits that he is receiving. We therefore affirm the district court's ruling with respect to the amount of disability benefits due.

### IV.

"ERISA ... is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans." *McGee v. Funderburg*, 17 F.3d 1122, 1124 (8th Cir.1994). "[A] district court considering a motion for attorney's fees under ERISA should [therefore] apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts." *Smith v. CMTA–IAM Pension*

*Trust,* 746 F.2d 587, 589 (9th Cir.1984). On cross-appeal, Mr. Welsh argues that the district court abused its discretion in denying him an award of attorney's fees. *See, e.g., Consolidated Beef Industries, Inc. v. New York Life Insurance Co.,* 949 F.2d 960, 966 (8th Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992).

"In determining whether to award attorney fees, the district court must consider: the degree of culpability or bad faith; the ability to pay an award of attorney fees; the deterrent effect an award would have on others; whether the attorney fees are requested [in a case that will] benefit ... other plan participants or ... resolve legal issues; and the relative merits of the parties' position[s].... A plan beneficiary who succeeds in an [ERISA] action ... should recover attorney fees unless 'special circumstances' would make such an award inequitable." *Lutheran Medical Center v. Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan,* 25 F.3d 616, 623 (8th Cir.1994). "The mere absence of bad faith on the part of the losing defendant is not such a 'special circumstance.'" *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1356 (8th Cir.1980). "The unsuccessful party has the burden of proving 'special circumstances' necessary to overcome the presumption in favor of an attorney fee award." *Lutheran Medical Center,* 25 F.3d at 624.

■ In its order denying attorney's fees to Mr. Welsh, the district court found that there was no bad faith on the part of the health insurance plan, assumed (not unreasonably, in our view) that the health insurance plan would be able to pay an attorney's fee award, and stated that there was "no indication that the award of attorneys' fees would have a deterrent effect," that Mr. Welsh's suit was solely "for his own benefit," and that the health insurance plan's position was "not without some merit." In the circumstances of this case, we believe that the district court improperly evaluated the relevant considerations in making the latter three statements and therefore that it abused its discretion in denying attorney's fees to Mr. Welsh.

■ "An award of reasonable attorney's fees [will] deter [health insurance plans] from opposing employee participant claims if the amount of the claim and the reasonableness of the employee's claim are such that the plaintiff's chances of success are great. If the employee's claim is frivolous, however, the [health insurance plan] will not be deterred from denying the claim as it would not run the same risk of liability for a judgment or for fees." *Smith*, 746 F.2d at 590. In addition, when both parties have arguably meritorious positions, as they did in this case, a decision "clarifying the terms" of a disability benefits contract will benefit not only the employee bringing that particular lawsuit but also the other participants and beneficiaries of the same contract "by settling [the meaning of] a disputed provision." *Id.* The health insurance plan itself benefits as well in that the decision gives guidance for "future administration" of that contract. *Id.*

In this case, we have explicitly interpreted the language in the disability benefits contract relating to "the primary amount of payment received under the [RRA]." We have also construed the setoff provision of that contract with respect to some of the kinds of circumstances that will preclude a setoff for awards received under FELA. Neither of those issues is likely to be unique to Mr. Welsh. Indeed, the secretary of the committee that administers the disability benefits contract stated, in an affidavit to the district court, that the proper construction of the disability benefits contract has been at issue "in several prior instances involving offsets for prior FELA awards." The health insurance plan itself, moreover, remarks in its brief to this court that "interpretation of the setoff provisions of [the disability benefits contract will] materially affect defendant's obligations to the plan participants." We note as well that although we agree that the health insurance plan's position was "not without some merit," as the district court stated, "the relative merits of the parties' positions" are determined, "in the final analysis, [by] the result obtained by the plaintiff." *Smith*, 746 F.2d at 590. In this case, Mr. Welsh prevailed on appeal on every issue challenged by the health insurance plan.

In light of all of those circumstances, we believe that the district court improperly evaluated the considerations relevant to an award of attorney's fees to Mr. Welsh, and we therefore reverse the district court's denial of those fees. Because it is not completely clear how much the district court would approve for those attorney's fees, we remand the case for further proceedings on that question in light of this opinion.

McMILLIAN, Circuit Judge, dissenting.

For the reasons discussed below, I respectfully dissent. In my view, the plan was entitled to set off the FELA award against the disability benefits due to Welsh. Accordingly, I would reverse the grant of summary judgment in favor of Welsh and remand the case to the district court with instructions to grant summary judgment in favor of the plan. In addition, although I agree with the majority opinion to reverse the district court's decision denying attorney's fees in favor of Welsh (for reasons different from those stated in the majority opinion), I would remand for reconsideration of that issue on the merits, not just for a determination of the amount of such an award.

First, I agree that the applicable standard of review of the plan's setoff decision is de novo. Majority op. at 1335.

Unlike the majority opinion, I would argue that it makes no difference to the setoff issue whether or not the injury at issue in the FELA lawsuit (back injury) is the same as that for which Welsh receives disability benefits (arachnoiditis), *id.* at 1335, or whether Welsh's arachnoiditis is an independent cause of his disability or a consequence of his original back injury. *Id.* at 1336. Both the short-term and long-term disability plans expressly provide that the amount of disability benefits shall be reduced by any amount paid or payable under the FELA. The short-term plan provides in part that short-term disability benefits "will be decreased by ... [a]ny disability benefit paid or payable under ... the Federal Employers Liability Act." Similarly, the long-term plan provides in part that the amount of the benefits "shall be reduced by any amount paid or payable ... under the Federal Employers Liability Act."

The setoff provisions thus provide that disability benefits are to be reduced by "any amount" paid under the FELA, whether or not the injury underlying the FELA award is the same as or unrelated to that underlying the disability benefits. I do not understand why this is a "completely irrational" construction of the setoff provisions, *see* majority op. at 1338, particularly when, as noted by the majority opinion, the disability plans themselves contain no language requiring "the same injury" to be the basis for a setoff of a FELA award against disability benefits. *Id.* at 1339. As noted by the majority opinion, the requirement that, in order to be used as a setoff against disability benefits, a FELA award must be for "the same loss" does not necessarily mean for "the same injury." *Id.* Similarly, the lump sum payment provision in the long-term disability plan refers to payment "on account of such disability," not payment "on account of such injury." *Id.*

I agree with the majority opinion that, strictly speaking, the plan does not face double liability for future lost wages because the disability payments are based on Welsh's total disability after 1985, which was apparently not an element of the damages sought in the FELA lawsuit (in which Welsh sought damages for future lost wages on the basis of his diminished earning capacity due to his partial disability between 1977 and 1985). *Id.* at 1339. However, I do not think the possibility of double liability is relevant to the availability of setoff under the plans as much as it is to the FELA analysis discussed below. As noted above, the setoff provisions expressly provide that disability benefits are to be reduced by "any amount" paid under the FELA, regardless of whether the FELA award was for pain and suffering or for future lost wages for partial disability, as was apparently the case here, or for total disability.

I would thus construe the disability plans to authorize a setoff of a FELA award against short-term and long-term disability benefits. This contractual right of setoff is not proscribed by § 5 of the FELA, 45 U.S.C. § 55. *See Clark v. Burlington Northern, Inc.,* 726 F.2d 448, 450–51 & n. 3 (8th Cir.1984) (essentially same long-term and short-term disability plans at issue in the present case; setoff held appropriate because employer clearly intended to make voluntary disability plan supplemental to sums recovered under FELA); *see also Burlington Northern R.R. v. Strong,* 907 F.2d 707, 712–14 (7th Cir.1990) (same); *Folkestad v. Burlington Northern, Inc.,* 813 F.2d 1377, 1380–83 (9th Cir.1987) (same); *Kalanick v. Burlington Northern R.R.,* 242 Mont. 45, 56–57, 788 P.2d 901, 908–09 (1990) (same).

Nor is the setoff of a FELA award against short-term and long-term disability benefits proscribed by ERISA. *See Nesom v. Brown & Root, USA, Inc.,* 987 F.2d 1188, 1193 (5th Cir.1993) (worker's compensation benefits setoff against long-term disability benefits), *citing Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 521, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981) (amount of pension benefits reduced by worker's compensation awards; ERISA did not prohibit "integration," a calculation practice under which benefit levels are determined by combining pension funds with other public income streams available to retired employee).

Because I agree with the plan that the FELA award must be set off against the disability benefits due, I would not reach the issues involving the calculation of the amount of disability benefits or "the primary amount of payment received under the Railroad Retirement Act."

Finally, I do agree with the majority opinion that the district court order denying attorney's fees should be reversed, although for different reasons. Because I would reverse the district court decision on the setoff issue on the merits, I would also vacate the attorney's fees order and remand the request for attorney's fees to the district court for reconsideration on the merits, not just for a determination of the amount of such an award. A different decision on the merits may warrant reconsideration of the decision on attorney's fees. *Cf. Nesom v. Brown & Root, USA, Inc.,* 987 F.2d at 1195 (reversing decision in favor of employee on the merits and awarding attorney's fees).