25 F.3d 616
 62 USLW 2799, 18 Employee Benefits Cas. 1348
 LUTHERAN MEDICAL CENTER, OF OMAHA, NEBRASKA, d/b/a Lutheran
General Hospital d/b/a Richard H. Young Memorial Hospital, a
non-for-profit Nebraska Corp.; William H. Henderson, M.D.,
Plaintiffs-Appellees,
v.
CONTRACTORS, LABORERS, TEAMSTERS AND ENGINEERS HEALTH AND
WELFARE PLAN, Defendant-Appellant.
 No. 93-1695.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 16, 1993.
Decided May 25, 1994.
 
 Jeffrey Miller, Omaha, NE, argued (M.H. Weinberg, on the brief), for appellant.
 Steven Davidson, Omaha, NE, argued (Jonathan R. Breuning, on the brief), for appellee.
 Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON*, Senior Circuit Judge, and BARTLETT**, District Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 The Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan appeals from a judgment of the district court[1] awarding Lutheran Medical Center of Omaha and Dr. William Henderson benefits related to the medical costs incurred by Frances Rodriguez, 814 F.Supp. 799. The Plan argues on appeal that the district court: (1) erred in ruling Lutheran and Henderson had standing to sue the Plan; (2) erred in concluding the trustees' denial of benefits was arbitrary and capricious; (3) erred in admitting a letter from one of the Plan's attorneys regarding another participant's claims; (4) erroneously applied plan benefit limitations; and (5) abused its discretion in awarding prejudgment interest and attorney fees to Lutheran and Henderson. We affirm.
 
 
 2
 On August 24, 1988, Rodriguez was admitted to Bishop Clarkson Hospital, a medical-surgical hospital in Omaha, as a result of a drug overdose. She was subsequently admitted to Richard H. Young Memorial Hospital, a psychiatric facility operated by Lutheran, from August 31 to October 29, 1988, January 11 to April 4, 1989, and May 21 to May 26, 1989, for treatment of major depression. Rodriguez was discharged from her last hospitalization in May 1989 with instructions to continue anti-depressant medication and psychotherapy sessions with Dr. Henderson. Rodriguez did not see Dr. Henderson again and died of lung and brain cancer in 1990.
 
 
 3
 The Plan, Rodriguez's health benefits provider, denied coverage for her three hospitalizations in Richard H. Young Hospital. The Plan sent a notice of denial to Rodriguez, stating as the explanation for the denial: "suicide attempt non-coveraged, per plan summary page 27(g)." The section to which the Plan referred in its letter states:
 
 
 4
 This provision does not cover: ... (g) injury or sickness resulting from any attempt at suicide or from any intentionally self-inflicted injury, whether the covered person is sane or insane.
 
 
 5
 Mr. Rodriguez appealed the trustees' decision to deny coverage, and the trustees affirmed their decision. In October 1989, the Rodriguezes made an assignment to Lutheran and Dr. Henderson, who filed suit against the Plan.
 
 
 6
 The district court found that the Rodriguezes validly assigned their benefit payments to Lutheran and Henderson, that Mrs. Rodriguez was covered under the Plan for her hospitalizations and related services, and that the Plan's denial of coverage was arbitrary and capricious. The Plan appealed.
 
 I.
 
 7
 The Plan first argues Lutheran and Henderson, as assignees of Mr. and Mrs. Rodriguez, lacked standing to bring an action to recover the charges for Mrs. Rodriguez's hospital and medical services. Specifically, the Plan argues that the language of the Plan's Agreement and Declaration of Trust prohibits assignment of rights, that the district court erred in finding the Plan was estopped from relying on the Plan's assignment provisions, and that the assignments violate the Plan's policy regarding health care provider assignments. The district court found the assignments valid.
 
 
 8
 Under 29 U.S.C. Sec. 1132(a)(1)(B) (1988) only a "participant" in a plan or a "beneficiary" may sue to collect benefits owing under a plan. The circuits have taken different approaches to the issue of whether an assignee may sue. In Northeast Department ILGWU Health and Welfare Fund v. Teamsters Local No. 229 Welfare Fund, 764 F.2d 147, 153-54 & n. 6 (3d Cir.1985), the Third Circuit held that assignees may not sue under section 1132(a)(1)(B) because Congress did not list them in the section. However, that court held assignees who sue to enforce substantive rights under ERISA may obtain standing under section 1331(a), which supplies jurisdiction for federal common law claims. Id. at 156. The Ninth Circuit, in Misic v. Building Services Employees Health and Welfare Trust, 789 F.2d 1374 (9th Cir.1986), held that assignees stand in the shoes of beneficiaries and thus may sue to collect benefits. Id. at 1376-79. In Hermann Hospital v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1289-90 (5th Cir.1988), the Fifth Circuit held that assignees have standing, provided the assignment of benefits is authorized under both ERISA and the contract. Finally, in Kennedy v. Connecticut General Life Insurance Co., 924 F.2d 698, 700 (7th Cir.1991), the Seventh Circuit held that an assignee has standing to sue as long as the assignee has a "colorable claim to benefits." In other words, that court held that jurisdiction is lacking only when "the language of the plan is so clear that any claim as an assignee must be frivolous." Id. The issue of standing is one of first impression in this circuit. We are persuaded by the reasoning in Hermann and Misic, which require us to consider whether the assignment by the Rodriguezes was valid and whether ERISA authorizes the assignment. See 845 F.2d at 1289-90; 789 F.2d at 1378-79.
 
 
 9
 At the outset, we recognize that nothing in ERISA prohibits a plan participant from assigning a cause of action to a health care provider after the services have been rendered and the loss incurred, nor any language suggesting Congress intended to restrict such assignments. Denying standing to health care providers as assignees of beneficiaries may undermine the goal of ERISA, namely to improve benefit coverage for employees. Hermann, 845 F.2d at 1289 n. 13.
 
 
 10
 The Plan contends that the language of section 22 of the Declaration of Trust precludes Lutheran and Henderson from bringing an action as assignees. Section 22 provides:
 
 
 11
 No employee shall at any time, either during the life of said Trust, or upon the termination thereof, or upon his withdrawal or severance therefrom, in any manner, have any right to assign his rights or benefits under such Plan or this Trust, or to receive a cash consideration in lieu of such benefits.
 
 
 12
 This anti-assignment clause does not prevent Lutheran and Henderson from suing the Plan. Section 22 clearly prohibits assignment of "rights or benefits" under the Plan, but does not prohibit assignment of causes of action arising after the denial of benefits. Here, the Rodriguezes assigned their cause of action, not the right to receive benefits under the Plan.
 
 
 13
 Finally, the record shows the Plan has paid benefits to assignees for several years. Indeed, the Plan Administrator testified that the Plan pays benefits directly to health care providers. Moreover, the 1985 Summary Plan Description, which under ERISA must be available to all plan participants, clearly states that a participant "may assign benefits to a hospital or doctor, if you wish...." Because the Plan's actual practice is not in conformity with its strict anti-assignment provision, we conclude that nothing in the contract precludes a finding that Lutheran and Henderson have standing as assignees.
 
 
 14
 We observe that if we declared the assignment invalid and held that Lutheran and Henderson had no standing to bring this action the claim would revert back to the Rodriguezes, and after delay and expense to the litigants, would again be presented for decision.
 
 
 15
 We affirm the district court's ruling that the assignments are valid and that Lutheran and Henderson have standing to bring this action as assignees.
 
 II.
 
 16
 The Plan next argues the district court erred in determining the trustees' denial of Rodriguez's claim was arbitrary and capricious.
 
 
 17
 Although ERISA expressly authorizes judicial review of decisions to deny benefits, it does not specify the standard of review. See 29 U.S.C. Sec. 1132(a)(1)(B); Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 571 (8th Cir.1992). In Firestone Tire & Rubber Company v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989), the Supreme Court held that generally a reviewing court should apply a de novo standard to a denial of benefits. However, if the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then we will reverse a decision to deny benefits only if it was arbitrary and capricious. Id.; see also Cox, 965 F.2d at 571. The district court stated it would reach the same result under both standards, and then applied the harsher arbitrary and capricious standard.[2] We determine as a threshold matter whether the Plan gives the trustees discretion to deny benefits.
 
 
 18
 Among other things, the Plan's Agreement and Declaration of Trust confers upon the trustees the power and authority to: (1) establish and administer the Plan; (2) determine eligibility of an employee's dependents in the Plan; (3) compromise, settle, arbitrate and release claims or demands against the Plan as the trustees deem advisable; (4) decide all questions regarding amount, nature and duration of benefits; and (5) determine the means by which benefits are provided. The document also provides: "The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine." Article VI, Sec. 4.
 
 
 19
 In Collins v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 18 F.3d 556, 559 (8th Cir.1994), this court applied a deferential arbitrary-and-capricious standard when the plan gave the trustees power to construe the terms, decide all controversies regarding payment of claims, and "determine all matters of eligibility for the payment of claims." Id. at 559. In Brumm v. Bert Bell NFL Retirement Plan, 995 F.2d 1433, 1437 (8th Cir.1993), this court held that the trustees of a plan had discretionary authority where the plan gave them power to "define and amend the terms of the Plan and Trust, to construe the Plan and Trust and to reconcile inconsistencies therein." Id. In Finley v. Special Agents Mutual Benefits Association, Inc., 957 F.2d 617, 621 (8th Cir.1992), this court held that the trustees of a plan had discretion to define ambiguous provisions where the plan allowed payment of benefits for deaths resulting "directly from a confrontational situation, ... as determined by the SAMBA Board of Directors." Id. at 618-19. Finally, we believe the language in this trust agreement is similar to Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir.1993), in which this court applied a deferential standard of review. There, the trust agreement stated: "The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan." Id. Comparing the language of this Plan with Brumm, Finley and Cox, we conclude the trustees had discretion to determine Rodriguez's claim for benefits, and therefore, we apply the deferential abuse of discretion standard.
 
 
 20
 We review a district court's application of the deferential standard of review de novo. Bolling v. Eli Lilly and Co., 990 F.2d 1028, 1029 (8th Cir.1993). A decision by the trustees to deny benefits is an abuse of discretion if the action is "extraordinarily imprudent or extremely unreasonable." Cox, 965 F.2d at 572 (quoting George C. Bogert & George T. Bogert, The Law of Trusts and Trustees Sec. 560 at 201-04 (rev. 2d ed. 1980)).
 
 
 21
 In determining the reasonableness of the trustees' denial of benefits under a plan, Finley sets out five criteria that we must examine to determine if the trustees abused their discretion. See 957 F.2d at 621. The district court, while not explicitly analyzing the trustee's decision under Finley, determined the denial of benefits was arbitrary and capricious. Applying Finley, we believe that the trustees abused their discretion in denying Rodriguez's claim.
 
 
 22
 We first examine whether the trustees' interpretation of the exclusion provision was consistent with the goals of the Plan. The stated goal of the benefits plan is "providing and maintaining ... group life and group accident and health insurance, including group hospitalization, medical and surgical benefits, ... for the benefit of the employees, ... families or the dependents of such employees." The trustees relied on the provision allowing exclusion of expenses from "injury or sickness resulting from any attempt at suicide or from an intentionally self-inflicted injury" to deny Rodriguez's claim. This exclusion protects the trustees from paying claims "resulting from" suicide attempts. The minutes of a trustees' meeting on June 28, 1989, indicate that some trustees viewed the section as excluding all expenses incurred after a suicide attempt, regardless of the nature of the expense. The trustees argue that because Rodriguez was a "suicide risk," her expenses were not covered. We believe that the trustees interpret this exclusion provision too broadly to comport with the Plan's goals. The record shows that Rodriguez's alleged suicide attempt was caused by her underlying depression. Moreover, she was treated for "major depression," not for the alleged suicide attempts. There was also evidence that the alleged suicide attempt, was not, in and of itself, enough to require inpatient care. The trustees should not be allowed to use the exclusion to swallow coverage for an underlying condition merely because the expenses incurred are contemporaneous with or follow an alleged suicide attempt. The trustees' interpretation of the exclusion is inconsistent with the Plan's goals.
 
 
 23
 We next consider whether the Board's interpretation renders any Plan language internally inconsistent or meaningless. The district court found the trustees' reading of the exclusion clause "internally inconsistent" because the 1985 Summary Plan Description states "mental and nervous disorders, when confined to a hospital, are covered the same as any other sickness." To allow the trustees to interpret the exclusion to deny Rodriguez's claims would create an inconsistency between the Plan and Summary Plan Description. The Summary Plan Description creates an expectation that the expenses stemming from treatment of Rodriguez's "major depression," a mental disorder, would be covered. It would be inequitable to allow the trustees to avoid payment based on the exclusion provision.
 
 
 24
 Third, under Finley, we next determine if the Plan satisfies ERISA requirements. The Plan fails to meet the ERISA requirement that the summary plan description be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. Sec. 1022(a)(1). A summary plan description must not mislead, misinform or fail to inform participants and beneficiaries of the requirements of the Plan. See Brumm, 995 F.2d at 1439 (citing Genter v. Acme Scale & Supply Co., 776 F.2d 1180, 1185 (3d Cir.1985)). The 1985 Summary Plan Description failed to inform participants that nervous and mental disorders would not be covered if they related to or followed a suicide attempt. A participant who reads both the Plan and the Summary Plan Description would hardly assume that expenses for a mental disorder would not be covered merely because the underlying disorder caused or is closely proximate to a suicide attempt. Therefore, we conclude the Summary Plan Description does not comply with ERISA so as to make the trustees' interpretation reasonable.
 
 
 25
 Fourth, we next consider whether the trustees have interpreted the exclusion with consistency in the past. The district court found the trustees granted benefits to some participants who incurred expenses after attempting suicide. In 1987 the trustees paid the hospital and medical expenses of "Jane Doe" after she allegedly attempted suicide by slitting her wrists. Similar to Rodriguez, Jane Doe was first admitted to a general hospital and then transferred to a psychiatric hospital where she received treatment for her underlying depression. The trustees initially denied this claim using the same terminology, "suicide attempt non-covered," as Rodriguez's denial. However, the trustees later determined the suicide attempt was not "serious" and paid the claim under the mental disorder provision. During consideration of the Doe claim, the Plan's attorney advised the trustees that while costs directly associated with a suicide attempt, such as the ambulance to the hospital and emergency room expenses, could be excluded, the costs of the subsequent psychiatric hospitalization should be paid. The trustees' payment of Doe's claim and their denial for Rodriguez's claim is an unreasonable inconsistency.
 
 
 26
 Finally, we must determine if the trustees' interpretation is contrary to the Plan's clear language. While the Plan is silent, the Summary Plan Description clearly covers mental and nervous disorders. Moreover, the Plan's own attorney, in an opinion regarding the exclusion provision, suggested that the "wording of our Plan" does not allow exclusion of costs not directly associated with a suicide attempt or imposition of a maximum lifetime limitation on hospitalization expenses incurred for treatment of mental disorders. The trustees' decision to deny coverage is inconsistent with the Summary Plan Description's plain language and the trustees' earlier interpretation of the Plan.
 
 
 27
 We conclude the district court did not err in its detailed findings that the trustees' denial was arbitrary and capricious.
 
 III.
 
 28
 The Plan also argues the district court erred in admitting a letter from the Plan's attorney discussing an unrelated claim, but one which was similar to Rodriguez's claim. In the letter, the attorney discussed the "Jane Doe" claim, in which the Plan paid benefits to a participant who allegedly attempted suicide. The Plan produced the letter pursuant to Lutheran's and Henderson's request for documents of similar claim files. The Plan contended it believed the letter had been removed before it turned over the documents.
 
 
 29
 Disclosure of privileged information "is inconsistent with the confidential attorney-client relationship and waives the privilege." In re Grand Jury Proceedings, 841 F.2d 230, 234 (8th Cir.1988).[3] Here, the Plan produced the letter with the other documents. The Plan thus destroyed the confidential status, if any, of the letter by disclosing it to Lutheran and Henderson.
 
 IV.
 
 30
 The Plan next argues that the district court erred in not limiting recovery to Lutheran and Henderson of Rodriguez's benefits to a lifetime maximum of $50,000, and that reimbursement for doctor visits is limited to $15 per visit, with an annual maximum of fifty visits. We believe the Plan's maximum recovery amount does not apply to Rodriguez's expenses.
 
 
 31
 The Plan relies on the section of the Plan which states:
 
 
 32
 Mental and nervous disorders, when confined to a hospital, are covered the same as any other sickness. When not hospital confined and totally disabled, benefits are payable at 50% in excess of the deductible. Maximum payment for doctors' visits is $15 a visit (not more than 50 visits during each calendar year). A lifetime maximum of $50,000.
 
 
 33
 Because Rodriguez was confined to a hospital, her expenses should be "covered the same as any other sickness." Under the plain language of the Plan, the lifetime limitation and doctor visit restriction do not apply to expenses of patients confined to a hospital. The Plan's counsel even admitted that, in his opinion, the limitation did not apply to inpatient expenses. We reject the Plan's argument that it is not liable for the full amount of Rodriguez's hospitalization and medical expenses.
 
 
 34
 The Plan also argues that the district court erred in not limiting the payment for room and board charges to $190 per day. The district court found that ERISA requires notification to participants before imposing such a benefit limitation. See 29 U.S.C. Sec. 1022(a)(1), Sec. 1024(b)(1). The court found that the 1985 Summary Plan Description was silent on a room-charge limitation and therefore the Plan could not limit its liability to $190 per day.
 
 
 35
 We conclude the district court did not err in refusing to apply the lifetime maximum limitation or the room rate limitation.
 
 V.
 
 36
 The Plan next argues the district court abused its discretion in awarding Lutheran and Henderson prejudgment interest and attorney fees. We affirm.
 
 
 37
 Under ERISA, awards of attorney fees and prejudgment interest are discretionary. 29 U.S.C. Sec. 1132(g); Short v. Central States, Southeast & Southwest Areas Pension Fund, 729 F.2d 567, 576 (8th Cir.1984). We review the district court's decision to award prejudgment interest and attorney fees under an abuse of discretion standard, and reverse only if the record clearly shows an abuse of discretion. Id.
 
 
 38
 An award of prejudgment interest is necessary to allow a prevailing ERISA beneficiary to obtain "appropriate equitable relief." Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1219 (8th Cir.) (quoting 29 U.S.C. Sec. 1132(a)(3)(B)), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). Generally, a court should award prejudgment interest unless "exceptional or unusual circumstances exist making the award of interest inequitable." Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir.), cert. denied, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). The district court did not abuse its discretion when it found no unusual circumstances in this case.
 
 
 39
 Prejudgment interest compensates Lutheran and Henderson for amounts they would have received four years earlier if the Plan had paid the benefits when the Rodriguezes first filed the claims. A denial of prejudgment interest would prevent Lutheran and Henderson from being made whole because they have been denied the use of the money. See Short, 729 F.2d at 576. The district court acted within its discretion in awarding prejudgment interest to Lutheran and Henderson.
 
 
 40
 With respect to the award of attorney fees of $49,299.69, the Plan argues the district court abused its discretion in awarding attorney fees and contends the district court intended to "punish" the Plan. We conclude the district court acted within the parameters of its discretion in setting the amount of the award.
 
 
 41
 Section 1132(g)(1) of ERISA gives a district court discretion to award attorney fees. Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir.1984). In determining whether to award attorney fees, the district court must consider: the degree of culpability or bad faith; the ability to pay an award of attorney fees; the deterrent effect an award would have on others; whether the attorney fees are requested to benefit the other plan participants or to resolve legal issues; and the relative merits of the parties' position. Jacobs v. Pickands Mather & Co., 933 F.2d 652, 659 (8th Cir.1991). The Plan argues the district court erroneously viewed the Plan as acting with bad faith.
 
 
 42
 A plan beneficiary who succeeds in an action to enforce rights under a plan should recover attorney fees unless "special circumstances" would make such an award inequitable. Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1356 (8th Cir.1980); Gunderson v. W.R. Grace & Co. Long-Term Disability Income Plan, 874 F.2d 496, 500 (8th Cir.1989). The unsuccessful party has the burden of proving "special circumstances" necessary to overcome the presumption in favor of an attorney fees award. Landro, 625 F.2d at 1356 n. 19; Gunderson, 874 F.2d at 500. Here, the Plan has not shown any special circumstances. Moreover, the district court exhaustively considered all five factors set forth in Jacobs. See 933 F.2d at 659. We cannot conclude it placed undue emphasis on the culpability aspect so as to make the award an abuse of its discretion.
 
 
 43
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 
 *
 The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed
 
 
 **
 The HONORABLE D. BROOK BARTLETT, United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska
 
 
 [2]
 We recognize that this circuit has determined that the proper standard of deferential review is an "abuse of discretion" rather than the arbitrary and capricious standard. See Cox, 965 F.2d at 572 n. 3. However, these two standards are virtually "a distinction without a difference." Id
 
 
 [3]
 Although we are aware that some courts recognize an exception when allegedly privileged documents are disclosed by mistake or inadvertence, see id. at 234 n. 5 (citing Transamerica Computer Co., Inc. v. International Business Machines Corp., 573 F.2d 646 (9th Cir.1978)), we are not persuaded that the Plan's counsel mistakenly or inadvertently gave the documents to Lutheran's and Henderson's attorneys