Carol Knight JACKSON, on behalf
of herself and all others
similarly situated

v.

FORTIS BENEFITS INSURANCE
COMPANY.

No. 99–CV–689 (JMR/FLN).

United States District Court,
D. Minnesota.

Aug. 1, 2000.

Matthew B Newman, Mansfield Tanick & Cohen, Jeff I Ross, John B Massopust, Zelle Hofmann Voelbel & Gette, Minneapolis, MN, for plaintiffs.

Stephen Paul Lucke, Timothy Earle Branson, Matthew E Klein, Dorsey & Whitney, Minneapolis, MN, for defendants.

## ORDER

ROSENBAUM, District Judge.

The Court here considers an unsettled question of law: Is an employee benefits plan, qualified under the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1001 *et seq.*, liable for interest on plan benefits paid after a period of delay absent a showing of fault? The question is before the Court on cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 56.

---

1. The facts are drawn from the parties' pleadings. Any reference to documents outside the pleadings is indicated by citation to the record.

Plaintiff, Carol Knight Jackson, seeks such interest on her own behalf and on behalf of members of a putative class. Defendant, Fortis Benefits Insurance Company, denies such interest is available. The Court heard oral argument on January 14, 2000.

Upon review of the ERISA statute and applicable precedent, the Court finds prejudgment interest is not available under 29 U.S.C. § 1132(a)(3)(B) absent a showing that a plan administrator has either breached ERISA's statutory obligations or the terms of the plan document. Because plaintiff does not allege, nor does her evidence support, any such breach, her motion for summary judgment is denied, and defendant's motion is granted.

## I. *Background*

The parties agree as to the material facts.[1] Carol Knight Jackson worked for the Minnesota State Employees Union AFSCME Council No. 6 ("AFSCME") from 1986 until mid–1995. As an AFSCME employee, she participated in a qualified ERISA long-term disability plan ("the Plan") underwritten by Fortis Benefits Insurance Company.

The Plan requires payment of disability benefits upon receipt of "proof that [the claimant] is totally disabled due to sickness or injury and requires the regular care of a physician." Affidavit of Lori Schafer ("Schafer Aff."), at 54573. Total disability is defined in the Plan as "an injury or sickness which ... prevents the insured from doing each of the main duties of his or her regular job." Schafer Aff., at 54572. The Plan requires written proof of disability within 90 days of the elimination period[2] whenever practicable, although it provides that "[a] claim will not be affected if the insured cannot give us proof within that time." Schafer Aff., at 54575.

---

2. The elimination period is the "period of consecutive days of total disability for which no benefit is payable." Schafer Aff., at 54571. Under the Plan, the period is 90 days.

In 1994, plaintiff took a short-term disability leave. Her medical records from that period suggested she may have suffered from post-traumatic stress disorder ("PTSD"). Affidavit of Matthew Newman ("Newman Aff."), at Ex. 3. Plaintiff returned to work under voluntarily-reduced job responsibilities, but still felt unable to perform her job functions. Plaintiff left her AFSCME employment in July, 1995.

In January, 1996, plaintiff submitted her claim for long-term disability benefits to defendant, claiming a disability onset date of April 12, 1995. The physician's statement, submitted in accordance with the Plan's terms,[3] listed plaintiff's disabling diseases as arthralgia/fibromyalgia, allergy, fatigue, joint pain, irritable bowel, and magnesium deficiency. Defendant denied plaintiff's claim on June 7, 1996.

Plaintiff, assisted by her first lawyer, appealed the denial on September 26, 1996. Defendant submitted plaintiff's medical records for an independent review by a rheumatologist. Based upon this review, defendant denied plaintiff's appeal. The denial letter noted that defendant had contacted one of plaintiff's physicians regarding her claim and had been informed of the possibility of PTSD. Defendant's letter told plaintiff that "[t]his information introduced the post-traumatic stress disorder diagnosis for which we do not have any documentation." Newman Aff., at Ex. 2.

When informed of defendant's denial of the appeal, plaintiff indicated her intent to challenge the decision using defendant's Group Claim Denial Review Procedure. Despite her stated intention, plaintiff did not file this challenge for nearly 17 months. This delay was caused by plaintiff's decision to switch attorneys on two separate occasions, and by an apparent difficulty in locating and collecting necessary medical records. Throughout this 17–month delay, defendant repeatedly granted plaintiff all necessary extensions in which to file her appeal. On June 12, 1998, plaintiff's third attorney filed the appeal of the denial of plaintiff's disability claim.[4]

In the letter accompanying plaintiff's appeal, her attorney explained the modified focus of her disability claim, stating:

> [T]he primary disabling condition we are presenting for your review is Post–Traumatic Stress Disorder ("PTSD"), which, while hinted at in prior medical records, was neither definitively diagnosed nor previously asserted by [plaintiff] when she first claimed LTD benefits.

Newman Aff., Ex. 3. Counsel's letter further stated:

> The prior submissions made by [plaintiff] to [defendant], while made to support other diagnoses, are still supportive of our PTSD claims, but indirectly so. They should be read as relevant evidence, but probably are useful only as background.

Newman Aff., at Ex. 3.

Plaintiff's appeal argued that the PTSD claim was not new, but had been present in her medical records since 1994. The appeal recognized, however, that because it had been difficult to accurately identify the psychological underpinnings of plaintiff's physical symptoms, plaintiff's own physician had felt " 'the connection between [plaintiff's] disability and her difficulties getting to work, doing her job, were not well correlated with the diagnoses' " previously offered in support of the disability claim. Newman Aff., at Ex. 3. Plaintiff's appeal, therefore, was ultimately premised on her desire to "show for the

---

3. *See* Schafer Aff., at 54575.

4. The parties differ to some extent on the way they characterize this appeal—which, for the first time, focused on PTSD as the underlying cause of plaintiff's disability. Plaintiff claims she merely refined the basis for her disability claim, pointing to previously submitted medical records suggesting PTSD symptoms were present at the time of the original claim. Defendant contends plaintiff abandoned her prior physical disability claim, substituting a new mental disability claim. For the reasons set forth below, the Court finds it is unnecessary to resolve this question.

first time, [that] each element of a PTSD diagnosis has been satisfied, and this is a disabling condition." Newman Aff., at Ex. 3.

Faced with plaintiff's new focus on psychological—rather than physical—disability, defendant sought a medical review by a staff psychologist. The consulting psychologist recommended an independent review of plaintiff's medical records by a psychiatrist. On October 6, 1998, following the independent review, defendant again denied plaintiff's claim, but carefully identified missing or additional medical information that plaintiff could submit to further substantiate her claim of PTSD disability.

Plaintiff's counsel requested—and was given—additional time to prepare an appeal of this decision. On December 22, 1998, plaintiff's appeal was filed.

In the December, 1998, appeal, plaintiff, for the first time, submitted additional medical records supporting her claim of disability, which included records from three mental health professionals whom plaintiff had seen at or around the time of the onset of her disability. These records were accompanied by reports from a psychologist and a psychiatrist who had examined plaintiff as part of her claim for social security disability benefits.

On January 12, 1999, approximately three weeks after receiving this appeal with the new medical information, defendant granted plaintiff's disability claim. Defendant established a disability onset date of April 6, 1995. As a result, plaintiff's benefit commencement date (which, under the Plan followed the 90–day elimination period) was set at July 5, 1995. Applying the Plan's 24–month limit on disability benefits for mental disability, plain-

tiff received benefits for the period from July 5, 1995, to July 4, 1997. Plaintiff received those benefits in a lump sum payment on January 12, 1999.

The ERISA payment included all sums due under the Plan for the 24–month mental disability period, but did not include interest on that amount for the time between April 6, 1995—the disability onset date—and January 12, 1999, the disability benefits payment date. Plaintiff, thereafter, requested that interest be paid. Defendant responded by letter, stating it did not "pay interest in connection with claim decisions which are overturned in the course of [the] Group Claim Denial Review Procedure." Affidavit of Theresa Dalen, at Ex. 32. Plaintiff subsequently filed the present lawsuit, seeking relief in the form of interest for herself and all others similarly situated on the twin grounds of defendant's unjust enrichment and breach of fiduciary duty.[5]

## II. *Analysis* [6]

■ It is well-settled in the Eighth Circuit that ERISA's § 502(a)(3)(B) allows an award of prejudgment interest to compensate a plaintiff for delayed benefits following a successful civil action to recover those benefits. *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir. 1981). The novel question presented here is whether § 502(a)(3)(B) allows an independent action to recover interest when benefits have been delayed, but were paid prior to any civil action for their recovery.

### A. *Equitable Relief Under ERISA*

Section 502(a)(3)(B) creates a civil action for equitable relief "(i) to redress ... violations [of any provision of this subchapter or the terms of the plan] or (ii) to enforce

---

**5.** Plaintiff voluntarily waived the two additional counts in her complaint. She surrendered an effort to invoke ERISA's prohibited transaction rule, 29 U.S.C. § 1106, and to obtain declaratory judgment. *See* Pl. Mem. Opp. S.J. at 14 n. 5.

**6.** The parties agree upon the relevant facts, and the Court agrees the matter is ripe for

summary judgment. Fed.R.Civ.P. 56. The Court sees no need to recite the applicable standards to be applied in considering summary judgment. For a thorough discussion of those standards, the interested reader may reference *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). Therefore, by its terms, ERISA allows equitable relief in two situations: when a plaintiff seeks to remedy a plan breach, or when a plaintiff seeks to enforce rights granted under a plan or the statute. It provides no relief in the absence of a breach, either already accomplished or anticipated.

Precedent supports this reading. In each decision cited by the parties or found by this Court where prejudgment interest has been awarded, the relief was predicated on a finding that a statutory or contractual breach occurred. *See, e.g., Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938 (8th Cir.1999) (discussing the availability of prejudgment interest following a breach of fiduciary duty);[7] *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322 (8th Cir.1995) (awarding prejudgment interest following a breach of an ERISA plan); *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743 (8th Cir.1986) (allowing prejudgment interest following a breach of contract); *Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567 (8th Cir.1984) (holding that the defendant withheld pension benefits in breach of the plan); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir. 1981) (awarding prejudgment interest after a violation of ERISA). As the *Dependahl* court noted, the breach need not result from bad faith, but there must be a breach. *Dependahl*, 653 F.2d at 1219 (holding the ERISA plan administrator's good faith to be only one of a number of factors considered in awarding prejudgment interest).

In the present case, plaintiff asks this Court to expand upon ERISA's plain statutory language and award interest in the absence of a breach. In doing so, she asks the Court to expand the remedies available under ERISA through the Court's power to extend the common law. The Court is disinclined to do so.

While "it is well settled that Congress intended that the federal courts would fill in the gaps [in ERISA's statutory scheme] by developing, in light of reason, experience, and common sense, a federal common law of rights and obligations imposed by the statute," that power exists only in situations "where the statute does not provide explicit instructions." *Teamsters Pension Trust Fund of Philadelphia & Vicinity v. Littlejohn*, 155 F.3d 206, 208 (3d Cir.1998). When this Court considers the wisdom of the Third Circuit's expression, it must also consider its converse: When a statute is explicit, the Court is without the power to go beyond Congress's expressed intent.

In § 502(a)(3)(B), Congress provided for "appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). As the Supreme Court noted, however, the statute does not authorize " 'appropriate equitable relief' at large, but only 'appropriate equitable relief' for the purpose of 'redress[ing any] violations or ... enforc[ing] any provisions' of ERISA or an ERISA plan." *Mertens v. Hewitt Associates*, 508 U.S. 248, 253, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Plaintiff's request for interest in the absence of a breach by an ERISA plan administrator seeks relief beyond the power of the Court. Where Congress has clearly spoken, there is no need for the Court to create a remedy. The common law operates only in the interstices of the law. Here, the statutory framework is explicit, and the Court is ill advised to create that which Congress has chosen to forego.[8]

---

7. The *Kerr* court denied a plaintiff's request for interest on benefits paid. It did so, however, because the plaintiff had already received all the interest he was owed. *Kerr*, 184 F.3d at 946.

8. The Court's refusal to extend the availability of equitable relief under ERISA is further supported by the classic doctrine of *inclusio unius est exclusio alterius* (the inclusion of one is the exclusion of another). *See U.S. Marshals Service v. Means*, 741 F.2d 1053 (8th Cir.1984). By demarcating those circumstances in which equitable relief may be awarded, Congress has shown a disinclination to award that same relief in any other circumstances.

Plaintiff offers her own views of law and policy to argue why prejudgment interest should be required, notwithstanding an inability to show either a statutory or contractual breach to support the award. Her arguments fail.

### 1. *Implied Duty of Good Faith and Fair Dealing*

Plaintiff's first argument—that precluding an independent action for interest absent proof of a breach creates a perverse incentive for plan administrators to willfully delay benefit payments, thereby enriching the plan—is, in this case, wholly inapplicable. The facts plaintiff has presented do not show, in any way, that the administrator wrongfully declined to pay benefits. Rather, the administrator kept all options open for plaintiff, notwithstanding the fact that her early submissions did not support her request for benefits. On these facts, the administrator cannot be said to have willfully delayed any benefits whatsoever.

■ Further, the Court finds plaintiff's argument regarding a perverse incentive to be incorrect, because it fails to consider that ERISA contracts, like all other contracts, are subject to an implied duty of good faith and fair dealing. *See Earle R. Hanson Associates v. Farmers Co-op. Creamery Co.*, 403 F.2d 65 (8th Cir.1968) (finding implicit within every contract a concept of good faith and fair dealing between the parties); *see also Dunnigan v. Metropolitan Life Insurance Co.*, 99 F.Supp.2d 307 (S.D.N.Y. 2000) (finding "as a matter of federal common law, that the duty of good faith and fair dealing that is implied in every contract applies with equal force to ERISA plans"). This implied duty forestalls plaintiff's perverse incentive problem.

Plaintiff's policy argument is based on the truism that a plan breach cannot occur until a final decision on benefits is made. Thus, plaintiff asserts that, absent an independent action for interest for delayed benefits, an unscrupulous plan administrator could deny benefits or delay payment on benefits owed without fear of sanction so long as benefits were eventually paid. Plaintiff's argument, however, collapses in light of the implied duty of good faith and fair dealing. It is clear that under the implied covenant, a deliberate or negligent failure to process benefits applications in a timely manner, or to pay benefits upon proof of disability, would violate the duty of good faith and fair dealing. Such behavior would, thereby, trigger a breach and open the plan to the statutory civil action for interest, thus eliminating any incentive for untoward or unnecessary delay.

Rather than encouraging delay by plan administrators, enforcing the statute's requirement of breach prior to civil action encourages both parties to seek a speedy resolution of disputes. A plaintiff has an incentive to provide a plan with all necessary information in a timely manner, because interest will be unavailable for delayed benefits absent a breach. Conversely, a plan has no incentive to delay benefits, because any showing of unnecessary delay evidences bad faith, triggering an independent claim for breach of the plan and liability for prejudgment interest. Plaintiff's policy arguments against the requirement of an underlying breach fail.

### 2. *Benefits Wrongfully Withheld*

Plaintiff asks for prejudgment interest, relying on precedent calling for such an award when benefits have been "wrongfully withheld." But plaintiff's claim of wrongful withholding finds no support on these facts. Those cases awarding interest following the wrongful withholding of payment are always predicated on the existence of a breach. Here, plaintiff has not alleged, and cannot show, that any breach has occurred.

For this argument, plaintiff relies on *Dependahl*, and declares: "Simply put, *Dependahl* stands for the proposition that a benefits provider can not [sic] profit from the use of money during the period it wrongfully withheld benefits." Pl. Mem.

S.J. at 2. The flaw in this argument, however, is clear from *Dependahl's* holding: *Dependahl* is a case of wrongful withholding of benefits.

Plaintiff has not presented any evidence to the Court suggesting her benefits were wrongfully withheld. The facts presented here certainly reveal a lengthy delay in the payment of benefits to plaintiff. But they also show the delay was caused by plaintiff's inability to properly authenticate her claim. As a result, when plaintiff seeks interest on benefits "wrongfully withheld," she actually seeks compensation for her own inability to support her claim.

Indeed, plaintiff does not allege any undue delay by defendant in processing her claim. It is clear that 17 months of the delay—almost half—were incurred at plaintiff's own request, as she and her attorneys worked to gather proof of her disability. The Court ascribes no fault for this delay, nor does it doubt plaintiff's contentions regarding the difficulty of diagnosing her disorder. But the Court will not reward her on that basis.

The Court will not interpret ERISA to provide a cause of action rewarding beneficiaries for delays they have occasioned. The law is not so contorted. Therefore, an entitlement to interest after a breach has occurred cannot be read to endorse an entitlement to interest before a breach has occurred.

### B. Breach of the Plan or ERISA

■ Having found that interest on ERISA benefits is only available upon proof of a breach of a plan's terms or a violation of the ERISA statute, the question arises as to whether plaintiff has offered proof of the requisite underlying breach. The Court concludes, as a matter of law, that no such breach has occurred.

Plaintiff does not cite to any portion of the Plan she claims has been breached, nor does she specify an ERISA statutory term which has been violated. Instead, she simply cites the statute and declares, *ipse dixit*, an entitlement to interest on the benefits paid to her. In doing so, she improperly equates the right she seeks to enforce and the remedy to enforce it. The argument must fail. Setting aside its tautological nature, it misapprehends § 502(a)(3)(B). As noted above, the statute grants equitable relief only to enforce terms of the Plan or ERISA itself. In the absence of a breach of a Plan term or an identified violation of the ERISA statute, § 502(a)(3)(B)(ii) does not advance plaintiff's cause.[9] Plaintiff simply cannot elide the statute's required breach.

To prove an underlying breach of the Plan, plaintiff must show that an explicit or implicit term of the Plan was violated. As discussed below, plaintiff cannot do so, and her claim must fail.

### 1. Explicit Contractual Term

It is undisputed that the Plan itself does not provide for payment of interest on benefits. It is also undisputed that once plaintiff submitted sufficient proof of her disability to the Plan, benefits were paid in full according to its terms. Plaintiff claims, of course, that because she was later found to have been entitled to benefits, she was wrongfully denied them previously. This argument misconstrues the Plan.

The Plan does not confer benefits on the event of disability; instead, it requires payment of benefits upon proof of disability. Consequently, although plaintiff was later shown to be entitled to benefits beginning in mid–1995, defendant did not owe those benefits until the close of 1998,

---

9. Plaintiff's complaint alleges a breach of fiduciary duty under 29 U.S.C. § 1104 based on defendant's failure to pay interest on delayed benefit payments. Plaintiff omits, however, any suggestion of how a failure to pay interest not required by the terms of the Plan or the provisions of ERISA amounts to a breach of defendant's fiduciary duty. The Court believes the careful analysis of this very issue in *Dunnigan v. Metropolitan Life Insurance Co.*, 99 F.Supp.2d at 320–22 (S.D.N.Y. 2000), suffices to dispose of plaintiff's unsupported claim and incorporates that court's reasoning as to this issue.

when plaintiff finally submitted sufficient proof of her disability. Defendant paid benefits to plaintiff when those benefits were due under the Plan's terms. It is clear that an administrator's adherence to a plan's terms cannot constitute a plan breach.

Moreover, since defendant paid plaintiff her benefits when they became due, she has, as a practical matter, no claim for interest. Interest accrues only when payment is due. *Fotta v. Trustees of the United Mine Workers of America,* 165 F.3d 209, 213 (3d Cir.1998); *see also Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 752 (8th Cir.1986) (holding that prejudgment interest should be awarded when the claimant "has been denied the use of money which was legally due"); *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 575 (8th Cir.1984) (citing the principle that "[b]oth at law and equity, interest is allowed on money due").

Here, the Plan's explicit terms show that no payment is due until the claimant provides proof of disability.[10] Schafer Aff., at 54573. Because plaintiff received the benefits to which she was entitled immediately after she submitted full proof of disability, the long delay between the disability onset date and the payment date does not create an entitlement to interest.[11]

### 2. *Implicit Contractual Term*

The simple fact that interest was not paid does not establish a breach of the implicit term of good faith and fair dealing. Plaintiff has not alleged any lack of diligence on defendant's part in responding to her submissions. Indeed, the three-and-a-half year delay before benefits were approved is directly traceable to plaintiff's inability to provide proof of a qualifying condition.[12]

Plaintiff concedes that "[t]o the extent delays occurred, they resulted from inherent processing of the claim and the elusive diagnosis of her psychological disability." Pl. Mem. Opp. S.J. at 4. She further acknowledges that "[t]he appeals process was delayed somewhat by record gathering and by the difficult diagnosis of her disability." Pl. Mem. Opp. S.J. at 6.

Delay under these circumstances cannot form the foundation of a claim of bad faith.[13] Once plaintiff tendered competent evidence of her disability to the defendant, including previously omitted medical records supporting her PTSD diagnosis, her benefits were fully paid within three weeks. Defendant's alacrity in reviewing

---

**10.** Whether plaintiff abandoned her physical disability claim for a mental disability claim or simply refined a composite claim is irrelevant. The Plan requires payment on submission of proof of disability, and however plaintiff's disability is classified, she was unable to produce sufficient proof of that disability until late 1998. Indeed, her own communication with defendant explicitly acknowledges this. *See* Newman Aff., at Ex. 3 (citing plaintiff's physician's belief that previous submissions failed to show the connection between plaintiff's PTSD diagnosis and her inability to perform her job functions).

**11.** The Court agrees with the authorities cited by the *Fotta* court, 165 F.3d at 213, which hold that interest is a remedy for breach; its non-payment is not a breach in and of itself. *See Spalding v. Mason,* 161 U.S. 375, 396, 16 S.Ct. 592, 40 L.Ed. 738 (1896) ("Every one who contracts to pay money on a certain day knows that, if he fails to fulfill his contract, he must pay the established rate of interest *as damages for his nonperformance.*") (emphasis supplied).

**12.** The *Dunnigan* court ably addressed this issue, noting that "[a]ny failure by a participant to submit the requisite materials impairs [the Plan's] ability to assess that participant's entitlement to benefits and constitutes a breach of good faith under the Plan. In that case, the breaching participant cannot be heard to complain about any delay in the payment of her benefits nor may she receive interest on any delay in payments caused by her own failure to submit an adequate claim." *Dunnigan,* 99 F.Supp.2d at 324–25.

**13.** The Court, to the contrary, considers that defendant's accommodation of plaintiff's need for additional time to gather supporting documents is powerful evidence of its good faith throughout the appeal process.

and reversing its decision evidences good faith, not bad faith.

Plaintiff asks the Court to consider the Eighth Circuit's statement that "[g]enerally, a court should award prejudgment interest unless 'exceptional or unusual circumstances exist making the award of interest inequitable.'" *Lutheran Medical Center v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan,* 25 F.3d 616, 623 (8th Cir.1994) (citation omitted).

Her reliance on *Lutheran Medical Center* is misplaced, however. This is because in *Lutheran Medical Center,* as in the other cases awarding prejudgment interest on delayed benefits, the award was made only following a determination that a breach had occurred. *Id.* at 618 (noting that the plan's denial of coverage was arbitrary and capricious). In the absence of any proof of a Plan breach or violation of the ERISA statute, plaintiff's claim for interest under § 502(a)(3)(B) cannot survive.

### C. *Unjust Enrichment*

■ The Court's analysis of the ERISA statute and its consequent cases precludes an action for interest unsupported by an underlying breach. As plaintiff cannot show the facts necessary to prove a breach, she may not seek equitable relief under § 502(a)(3)(B) on the basis of unjust enrichment. The law of unjust enrichment supports this result, as do the facts of the case.

Plaintiff correctly states that defendant has been enriched by retaining the "float"—the interest accrued on the benefits prior to their payment to her. She is incorrect, however, in asserting that such enrichment is unjust and is susceptible to an equitable remedy. As explained above, under the terms of the Plan, the benefits did not become due to plaintiff until she submitted proof of disability. Thus, the benefit amount, and the interest accrued on it, properly belonged to defendant until plaintiff submitted competent proof of disability and the award became due.

■ Unjust enrichment requires a showing that one party has retained something properly belonging to another. 66 Am.Jur. 2D *Restitution and Implied Contracts* § 3 (1973) (defining unjust enrichment as "the retention of money or property of another against the fundamental principles of justice or equity and good conscience"). Here, defendant retained only that which properly belonged to it; no action for unjust enrichment lies in such a circumstance.

### D. *Class Allegations*

Plaintiff filed this action both on her behalf and on behalf of a putative class defined as:

> All participants of the Plan and other "employee welfare benefit plans" maintained and administered by [defendant] who received delayed benefits payments and who were not paid interest on their benefits payments for the period of time during which [defendant] failed or refused [sic] to pay benefits based on a) an improper and subsequently overturned denial of a claim for benefits, b) any administrative oversight, or c) because of processing delays in paying benefit claims.

Complaint, at ¶ 8.

■ Plaintiff, the only named class representative, is not competent to represent the putative class, because the Court has determined that her personal claims fail as a matter of law. "Inherent in Rule 23 is the requirement that the class representatives be members of the class." *Great Rivers Co-op. v. Farmland Industries,* 120 F.3d 893, 899 (8th Cir.1997). Absent a class representative, "the putative class cannot be certified and its claims cannot survive." *Id.*

### III. *A Consideration of Law and Policy*

As a final note, the Court observes that it considers the result reached in this case both just and in accord with the policies underlying ERISA. This is not a dispute between commercial entities; it is a claim

by an ERISA plan beneficiary against an ERISA plan administrator and the insurance company which protects the Plan participants. The distinction is not at all trivial. Congress enacted ERISA to remedy the ills which occurred when pension and benefit plans were unfunded and their assets were dissipated, leaving working people who had relied upon those plans without funds or a remedy. One of the ways Congress protected America's workers was by taking strong steps to protect ERISA plans' assets.

Plaintiff makes much of a claimed "perverse incentive" to deny benefits and save interest payments. She is looking through the telescope the wrong way. If an ERISA plan faced interest penalties, absent any indication of wrongdoing, for properly protecting the plan assets—if it faced a dollar cost for denying benefits when there was insufficient support for the benefit claim—the interest penalty would undermine Congress's clear intention to protect plan assets. There would then be a truly perverse incentive to "save" interest costs by paying a premature or invalid claim. Such an action would weaken the very plans ERISA was designed to protect.

Where a commercial enterprise may well have an incentive to minimize its payments to those it owes, an ERISA plan is obligated to protect its assets to protect its members. An ERISA plan does not seek to maximize any profit; it is not a profit-making entity. Instead, it seeks to protect the welfare and benefits of its plan participants. This goal is furthered by fostering, and not by penalizing, a plan administrator's prudent efforts to husband plan assets. This is the wise choice made by Congress. Denial of interest payments in the absence of any wrongful denial of benefits furthers that goal.

## IV. *Conclusion*

The Court finds that 29 U.S.C. § 1132(a)(3)(B) provides an independent action under ERISA to recover interest on benefits only upon a showing of an underlying breach of the implicit or explicit terms of the plan or the provisions of ERISA. Plaintiff in this case has failed to offer evidence of either a breach of the Plan or a violation of ERISA, and so may not recover under § 502(a)(3)(B). She is, therefore, unable to sustain her personal claims in this matter. As such, the putative class she seeks to represent is left without a class representative to advocate the class claims, and her putative class action must fail as well.

Accordingly, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant's motion for summary judgment is granted.

3. Plaintiff's action is dismissed with prejudice.

4. The putative class action is dismissed without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.